UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEREMY HOCKENSTEIN, for himself and all others similarly situated,

        Plaintiff,

   v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,

        Defendant.

---

Case No.:  1:22-cv-04046-ER

**MEMORANDUM OF LAW IN SUPPORT OF CIGNA'S PARTIAL MOTION TO DISMISS**

**McDermott Will & Emery LLP**
One Vanderbilt Avenue
New York, New York 10017-3852
Tel: 212 547 5400
Fax: 212-547-5444

*Attorneys for Defendant Cigna*
*Health and Life Insurance Company*

**TABLE OF CONTENTS**

INTRODUCTION AND FACTUAL BACKGROUND ...................................................................1

ARGUMENT ...........................................................................................................................3

    I.      The Supreme Court Has Made Clear that Section 502(a)(3) Claims Are "Not Appropriate" When Another ERISA Provision Provides Adequate Relief. .........................................................................................................................4

          A.    Plaintiff Can Pursue His Claim for Additional Reimbursement (Count I) Through Section 502(a)(1)(B). ......................................................7

          B.    Plaintiff's Boilerplate Requests for Equitable Relief Do Not Make His Section 502(a)(3) Claims Appropriate. ................................................10

    II.     Plaintiff's Section 502(a)(3) Claims for Allegedly Inadequate EOBs (Count II) and Full and Fair Review (Count III) Should Be Dismissed. ...............15

CONCLUSION ......................................................................................................................19

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Ass'n v. United Healthcare Corp.*,
2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002) ........................................................................17

*Babino v. Gesualdi*,
278 F. Supp. 3d 562 (E.D.N.Y. 2017), *aff'd*, 744 F. App'x 30 (2d Cir. 2018) .........................9

*Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
775 F. Supp. 2d 730 (S.D.N.Y. 2011) ..............................................................................7, 9, 16

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
771 F.3d 150 (2d Cir. 2014) ...................................................................................................11

*Del Greco v. CVS Corp.*,
337 F. Supp. 2d 475 (S.D.N.Y. 2004), *aff'd*, 164 F. App'x 75 (2d Cir. 2006) ........................12

*Fershtadt v. Verizon Commc'ns Inc.*,
550 F. Supp. 2d 447 (S.D.N.Y. 2008) .......................................................................................5

*Frommert v. Conkright*,
433 F.3d 254 (2d Cir. 2006)............................................................................................ *passim*

*Gates v. United Health Grp. Inc.*,
2012 WL 2953050 (S.D.N.Y. July 16, 2012) .........................................................3, 9, 18, 19

*Gerosa v. Savasta & Co., Inc.*,
329 F.3d 317 (2d Cir. 2003).....................................................................................................11

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002).....................................................................................................2, 10, 13

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000)..................................................................................................................18

*Hughes v. Hartford Life and Accident Ins. Co.*,
507 F. Supp. 3d 384 (D. Conn. 2020).........................................................................................4

*Keir v. Unumprovident Corp.*,
2010 WL 3566878 (S.D.N.Y. Sept. 14, 2010)...........................................................................14

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
561 F.3d 112 (2d Cir. 2009), *abrogated on other grounds by Lexmark Int'l,
Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .................................................11

*Klecher v. Metro. Life Ins. Co.*,
    331 F. Supp. 2d 279 (S.D.N.Y. 2004)......................................................................9, 13

*Laurent v. PricewaterhouseCoopers LLP*,
    945 F.3d 739 (2d Cir. 2019).........................................................................................5

*Levi v. RSM McGladrey, Inc.*,
    2014 WL 4809942 (S.D.N.Y. Sept. 24, 2014)....................................................16, 17

*Levin v. Credit Suisse, Inc.*,
    2013 WL 1296312 (S.D.N.Y. Mar. 19, 2013) .............................................................9

*Levy v. Young Adult Inst., Inc.*,
    2014 WL 6611454 (S.D.N.Y. Nov. 21, 2014).............................................................5

*LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*,
    361 F. Supp. 3d 348 (E.D.N.Y. 2019) .................................................10, 12, 14, 16

*Mead v. Andersen*,
    309 F. Supp. 2d 596 (S.D.N.Y. 2004).........................................................................9

*Metro. Life Ins. Co. v. Sicoli & Massaro Inc.*,
    2016 WL 5390899 (S.D.N.Y. Sept. 26, 2016)..........................................................19

*Miller v. Int'l Paper Co.*,
    2013 WL 3833038 (S.D.N.Y. July 24, 2013) ...........................................................15

*Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*,
    64 F. Supp. 3d 459 (E.D.N.Y. 2014) .......................................................2, 9, 12, 18

*RJ v. Cigna Behav. Health, Inc.*,
    2021 WL 1110261 (N.D. Cal. Mar. 23, 2021)..........................................................18

*Rubio v. Chock Full O'Nuts Corp.*,
    254 F. Supp. 2d 413 (S.D.N.Y. 2003).........................................................................9

*Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc.*,
    2012 WL 832252 (E.D.N.Y. Mar. 12, 2012)...........................................4, 9, 12, 16

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)............................................................................................ *passim*

*Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*,
    285 F. Supp. 2d 382 (S.D.N.Y. 2003), *aff'd*, 404 F.3d 167 (2d Cir. 2005)............13

*Whelehan v. Bank of Am. Pension Plan for Legacy Cos-Fleet-Traditional Ben.*,
    621 F. App'x 70 (2d Cir. 2015) ..................................................................................7

*Wilkins v. Mason Tenders Dist. Council Pension Fund*,
   445 F.3d 572 (2d Cir. 2006)...................................................................................................4, 7

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ................................................................................................4, 9, 10, 16

29 U.S.C. § 1133...............................................................................................................2, 17, 18

Defendant Cigna Health and Life Insurance Company ("Cigna") respectfully submits this Memorandum of Law in support of Cigna's Partial Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").[1]

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff seeks to transform a run-of-the-mill ERISA benefits dispute into a needlessly complicated Section 502(a)(3) case. There is no need to "complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing." *See Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). The Section 502(a)(3) claims should be dismissed accordingly.

Cigna administers claims for various employer-sponsored health plans, including Plaintiff's plan—The Educational Alliance welfare benefit plan. (*See* FAC ¶¶ 8-9, 11.) Plaintiff brings this putative class action challenging Cigna's reimbursement of certain out-of-network ("OON") COVID testing claims after March 27, 2020. (*Id.* ¶¶ 14, 44, 58.) Specifically, Plaintiff alleges that he and his family members obtained COVID tests from an OON provider in September 2021 and January 2022; that he paid $250 for those tests; and that Cigna did not reimburse him for those claims in full. (*Id.* ¶¶ 19, 22-27, 32, 38.) Based on these allegations, Plaintiff brings ERISA claims—alleging that Cigna underpaid the disputed claims (Count I), did not provide adequate Explanation of Benefit ("EOB") forms for those claims (Count II), and did not provide full and fair review of those claims (Count III). For all three counts, Plaintiff seeks relief through both Sections 502(a)(1)(B) and 502(a)(3). (*Id.* ¶¶ 89, 98, 108.) Cigna is not moving to dismiss Plaintiff's claim for ERISA benefits (though discovery will show that this claim lacks merit). Plaintiff's Section 502(a)(3) claims under all three Counts should be dismissed, however.

---

[1] Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted. "First Amended Complaint" or "FAC" refers to ECF No. 17.

First, Plaintiff's Section 502(a)(3) claim for "reimbursement for COVID tests" in Count I (FAC at 17) should be dismissed because: (a) it seeks relief that is available under Section 502(a)(1)(B), which makes relief under Section 502(a)(3) inappropriate; and (b) the relief that Plaintiff seeks—more money for his COVID tests—is money damages, which is not available under Section 502(a)(3).  *See Varity*, 516 U.S. at 515 ("where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief **normally would not be 'appropriate.'**"); *Frommert v. Conkright*, 433 F.3d 254, 269-70 (2d Cir. 2006) (affirming dismissal of Section 502(a)(3) claim because "the relief that the plaintiffs seek, recalculation of their benefits . . . falls comfortably within the scope of § 502(a)(1)(B)"); *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("money damages are, of course, the classic form of *legal*"—not equitable—"relief") (emphasis in original).

Second, Plaintiff's Section 502(a)(3) claim based on allegedly inadequate EOBs (Count II) and lack of full and fair review (Count III) should be dismissed as well.  For both Counts, Plaintiff likewise seeks money damages as a remedy by asking that Cigna "cover" (*i.e.*, reimburse) the disputed claims (FAC at 25)—but that remedy is not available under Section 502(a)(3).  *See Knudson*, 534 U.S. at 210.

These Counts also fail for another reason.  Both are premised on an alleged underlying violation of Section 503.  (FAC ¶¶ 92, 101.)  By its plain terms, Section 503 only imposes obligations on "employee benefit **plan[s]**," 29 U.S.C. § 1133, but as Plaintiff acknowledges, Cigna is not his plan—The Educational Alliance is.  (FAC ¶¶ 8-9.)  Because Plaintiff cannot establish an underlying violation of Section 503, he cannot maintain a Section 502(a)(3) claim based on such an alleged violation.  *See Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 472 (E.D.N.Y. 2014) (dismissing "any possible [ERISA] § 503 claim" because

the plaintiff did not, nor could it, allege that any of the claims-administrator defendants were the "plans"); *Gates v. United Health Grp. Inc.*, 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012) (holding that Section 502(a)(3) "does not relieve [plaintiff] from having to establish an underlying violation of the statute," and dismissing because plaintiff could not establish a Section 503 violation against United Health Group, a non-plan defendant).

For these reasons, as further detailed below, the Court should grant Cigna's motion.

## ARGUMENT

Plaintiff relies on Section 502(a)(3) to: (1) seek additional "reimbursement for the costs of diagnostic Covid-19 tests" (FAC ¶ 73, Count I); (2) challenge EOBs that Cigna provided to its members for certain COVID-19 test claims as supposedly inadequate (FAC ¶ 92, Count II); and (3) challenge Cigna's claims review procedures because Cigna supposedly did not provide "full and fair review" for the disputed COVID-19 testing claims. (FAC ¶ 106, Count III.)

Section 502(a)(3) is not the right vehicle for any of these theories, however. Plaintiff's Section 502(a)(3) claim under Count I—which seeks additional reimbursement for the disputed claims—seeks the same relief that is already available under Section 502(a)(1)(B), and moreover, it also impermissibly seek money damages even though such relief is not available under Section 502(a)(3). Plaintiff's Section 502(a)(3) claims under Counts II and III—challenging the adequacy of Cigna's EOBs and its claims review process for the disputed claims—fare no better. In those Counts, Plaintiff likewise seeks money damages, which Section 502(a)(3) does not authorize. And separately, these claims are based on alleged underlying violations of Section 503, but because those obligations only apply to plans (which Plaintiff admits Cigna is not), Plaintiff cannot establish an underlying ERISA violation that is necessary to support his Section 502(a)(3) claims. All these Section 502(a)(3) claims should be dismissed accordingly.

I.   **The Supreme Court Has Made Clear that Section 502(a)(3) Claims Are "Not Appropriate" When Another ERISA Provision Provides Adequate Relief.**

Section 502(a)1(B) of ERISA authorizes a plan participant like Plaintiff to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Second Circuit described it, Section 502(a)(1)(B) is "the workhorse of ERISA remedy law . . . under which routine benefit denial and other ERISA claims proceed." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578 (2d Cir. 2006).

But Section 502(a)(1)(B) also imposes various procedural constraints—including, for example, the fact that when a court analyzes a benefit denial claim under Section 502(a)(1)(B), "the court's review is ordinarily confined to the [administrative] record that was originally before the claims administrator." *Hughes v. Hartford Life and Accident Ins. Co.*, 507 F. Supp. 3d 384, 391 (D. Conn. 2020). Enterprising plaintiffs' lawyers often try to get around these limitations by bringing run-of-the-mill benefits disputes as supposed equitable claims under Section 502(a)(3).

That is not how Section 502(a)(3) is meant to be used, though. *See Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc.*, 2012 WL 832252, at *11 (E.D.N.Y. Mar. 12, 2012) ("plaintiffs certainly should not be allowed to evade the requirements of § 1132(a)(1)(B) . . . simply by parroting the language of § 1132(a)(3)"). As the Supreme Court explained, Section 502(a)(3) serves as a "catchall" provision that acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 490. In that case, the Supreme Court found that resorting to this "catchall" was appropriate and indeed necessary—because plaintiffs "were no longer members" of the plan at issue and thus could not rely on Section 502(a)(1)(B) to obtain relief, and because they also could not rely on Section 502(a)(2) as "that provision, tied to § 409, does not

provide a remedy for individual beneficiaries." *Id.* at 515. Thus, the Supreme Court reasoned, plaintiffs in that case **had to** "rely on the *third* subsection [Section 502(a)(3)] or they have no remedy at all." *Id.* (emphasis in original); *see also id.* at 513 (finding reliance on Section 502(a)(3) appropriate on those facts because "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy").

But *Varity* also cautioned that this analysis does not hold when another ERISA provision provides a plaintiff with adequate relief. Specifically, the Supreme Court recognized that Section 502(a)(3) does not authorize equitable relief writ large; it only "authorizes '*appropriate*' equitable relief." *Id.* at 515 (emphasis in original). So, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief **normally would not be 'appropriate**.'" *Id.*; *accord Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 748 (2d Cir. 2019) ("the Supreme Court has expressly identified § 502(a)(3) as occupying a special 'catchall' remedial role in ERISA's statutory scheme, particularly in instances where other remedies for violations of the statute may be unavailable"); *see also, e.g.*, *Fershtadt v. Verizon Commc'ns Inc.*, 550 F. Supp. 2d 447, 452 (S.D.N.Y. 2008) ("Equitable relief is only appropriate when such relief is not available under other ERISA provisions"); *Levy v. Young Adult Inst., Inc.*, 2014 WL 6611454, at *5 (S.D.N.Y. Nov. 21, 2014) ("Courts have found that the availability of a claim under ERISA § 502(a)(1)(B) generally precludes a plaintiff from making a comparable claim under § 502(a)(3)").

In fact, the Supreme Court in *Varity* specifically relied on this "appropriate" statutory limitation to address legitimate concerns that *amici* raised—that enlarging the scope of equitable relief under Section 502(a)(3) would inevitably result in "lawyers . . . complicat[ing] ordinary benefit claims by dressing them up in 'fiduciary duty' clothing." 516 U.S. at 514. As the Supreme

Court reasoned, these concerns "seem[ed] to us unlikely to materialize" because Section 502(a)(3) only authorizes "'*appropriate*' equitable relief," and the availability of alternative relief—like under Section 502(a)(1)(B)—will typically mean that equitable relief is not appropriate. *See id.* at 515 (emphasis in original). Allowing a plaintiff to turn a run-of-the-mill benefits dispute into a Section 502(a)(3) claim simply by reciting equitable-relief-type buzzwords (like restitution, injunction, or disgorgement) would run counter to this important statutory limitation, and would encourage plaintiffs' lawyers to do precisely what *Varity* said they should not do.

Separate but related, the Supreme Court in *Varity* also acknowledged the risks of allowing plaintiffs to pursue the same "repackage[d]" claim under Section 502(a)(3) instead of Section 502(a)(1)(B)—which is that a plaintiff could then avoid the more administrator-friendly arbitrary and capricious standard of review that typically applies to denial of benefit claims, and instead take advantage of the more plaintiff-friendly "rigid level of conduct" standard that ERISA expects of fiduciaries. *See id.* at 513-14. Restricting Section 502(a)(3) claims to situations where a Section 502(a)(1)(B) is not available helps avoid such standard-of-review gamesmanship.

The Second Circuit has interpreted *Varity* to mean what it says: it is not appropriate to resort to Section 502(a)(3) when another ERISA provision is sufficient. *See Frommert*, 433 F.3d at 269-70. In *Frommert*, the Second Circuit recognized that "the Supreme Court . . . has consistently disfavored the expansion of the availability of equitable relief where remedies at law are sufficient." *Id.* at 270 (citing *Varity*); *see also id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) as an example of the Supreme Court "sound[ing] a note of caution concerning suits purporting to seek equitable relief while also seeking monetary damages"). The Second Circuit accordingly affirmed the dismissal of a portion of a Section 502(a)(3) claim that effectively sought "money damages through recalculation of [plaintiffs'] pension benefits"—

explaining that such relief "falls comfortably within the scope of § 502(a)(1)(B)," and that

"because adequate relief is available under this provision, there is no need on the facts of this case

to also allow equitable relief under § 502(a)(3)."  433 F.3d at 269-70; *see also Whelehan v. Bank*

*of Am. Pension Plan for Legacy Cos-Fleet-Traditional Ben.*, 621 F. App'x 70, 72 (2d Cir. 2015)

("ERISA § 502(a)(3) . . . may not be relied on by a claimant to pursue relief—in this case, pension

benefits—available under a separate ERISA provision.") (citing *Varity*, 516 U.S. at 515); *Wilkins*,

445 F.3d at 578 ("Section 502(a)(3) has been characterized as a 'catch-all' provision which

normally is invoked **only** when relief is not available under § 502(a)(1)(B).").

### A.    Plaintiff Can Pursue His Claim for Additional Reimbursement (Count I) Through Section 502(a)(1)(B).

*Varity* and its progeny stand for a simple proposition:  an ERISA plaintiff typically cannot

use Section 502(a)(3) to bring claims that can be addressed through another ERISA provision.  *See*

*supra*; *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 737-38

(S.D.N.Y. 2011) ("Second Circuit cases have made clear that *Varity* did not eliminate the

possibility of a plaintiff successfully asserting a claim under both ERISA § 502(a)(1)(B) and

ERISA § 502(a)(3), but rather indicated that equitable relief under § 502(a)(3) would not

'normally' be appropriate.").[2]  This is not the unusual case where Plaintiff can maintain a claim

for ERISA benefits together with a claim for equitable relief, because the relief he seeks—more

money for the disputed COVID-19 tests—is already available through Section 502(a)(1)(B).

---

[2] To be clear, Cigna does not argue that the availability of Section 502(a)(1)(B) automatically precludes a Section 502(a)(3) claim.  *See Frommert*, 433 F.3d at 272 (noting that *Varity* did not "foreclose[] the availability of a private cause of action for breach of fiduciary duty under § 502(a)(3) when another potential remedy is available").  Rather, the availability of alternative relief means that equitable relief normally is not appropriate—with the district court making that determination in the first instance, "based on ERISA policy and the special nature and purpose of employee benefits plans, as well as consideration of the relief afforded the plaintiffs under their § 502(a)(1)(B) claim." *Id.*

First, there can be no dispute that the remedy that Plaintiff seeks in Count I is additional reimbursement—or put more simply, more money for the COVID-19 tests at issue. Count I makes this explicit: it is titled "***Reimbursement*** for COVID tests." (FAC at 17.) And Plaintiff's allegations in support of Count I further confirm this point. (*See, e.g.*, *id.* ¶ 73 (alleging that "Plaintiff and each member of the Reimbursement Classes is entitled to full reimbursement for the costs of diagnostic Covid-19 tests . . . which Cigna, to date, has wrongly denied reimbursement").)

Second, it is equally clear that Plaintiff seeks to obtain this additional reimbursement through both Section 502(a)(3) and Section 502(a)(1)(B). In Count I, Plaintiff alleges that the supposed underpayments for the COVID-19 tests "constitute[] a violation of Cigna's fiduciary duties, a violation of the terms of ERISA, ***and*** a violation [of] the terms of the plan" (*Id.* ¶ 89.) Based on these allegations, Plaintiff brings these reimbursement-based claims "against Cigna pursuant to ERISA § 502(a)(3)" and also "under ERISA § 502(a)(1)(B)." (*Id.*)

But there is no need to resort to the "catchall" Section 502(a)(3) provision because Section 502(a)(1)(B) already gives Plaintiff a perfectly adequate avenue for relief. As the Supreme Court recognized in *Varity*, Section 502(a)(1)(B) "specifically provides a remedy for breaches of ***fiduciary duty*** with respect to the interpretation of plan documents and the payment of claims." 516 U.S. at 512. That is precisely the alleged conduct that Plaintiff challenges in Count I, since he alleges that Cigna breached its fiduciary duties by allegedly underpaying the disputed claims. (*See, e.g.*, FAC ¶ 79 (alleging that "Cigna's denial of such reimbursement claims deprives members of the Reimbursement Classes of their rights and benefits under Cigna ERISA Plans, and furthermore, violates Cigna's fiduciary duties").)

This alleged harm is redressable under Section 502(a)(1)(B)—like most ERISA benefit disputes—which means that resorting to Section 502(a)(3) is not "appropriate." *See Varity*, 516

U.S. at 515.  Courts have applied this reasoning to dismiss Section 502(a)(3) claims in very similar circumstances.  *See, e.g.*, *Biomed Pharms.*, 775 F. Supp. 2d at 738 (dismissing Section 502(a)(3) claims because "the gravamen" of those claims was that defendant "failed to follow proper procedures in denying the Patient's claim for benefits, which resulted in an improper denial of benefits," and "adequate relief for these claims is plainly available under Section 502(a)(1)(B)"); *Babino v. Gesualdi*, 278 F. Supp. 3d 562, 580-81 (E.D.N.Y. 2017) (denying motion for leave to add a claim for breach of fiduciary duty as futile, because "the 'equitable relief' sought by the Plaintiff is available under another section of ERISA . . . Section 502(a)(1)(B)"), *aff'd*, 744 F. App'x 30 (2d Cir. 2018); *Plastic Surgery Grp., P.C.*, 64 F. Supp. 3d at 470-71 (dismissing Section 502(a)(3) claims because "despite plaintiff's request for declaratory and injunctive relief in the complaint, the claims are plainly legal claims for money damages, because they seek no more than compensation for loss resulting from the defendant's breach of legal duty"); *Gates*, 2012 WL 2953050, at *10 n.10 (dismissing Section 502(a)(3) claim "based on defendants' alleged failure to determine Medicare benefits properly" because "any harm plaintiff suffered as a result of defendants' determination of her benefits may be adequately compensated by the monetary relief she seeks under ERISA Section 502(a)(1)(B)").[3]  This Court should do the same.

---

[3] *See also Staten Island*, 2012 WL 832252, at *10-11 (dismissing Section 502(a)(3) claim because "although styled as requests for equitable relief . . . plaintiffs are simply recasting their claims for the provision of benefits," and "courts have consistently refused to order injunctive relief that has the practical effect of ordering the provision of benefits under the plan, because such relief is available under § 1132(a)(1)(B)"); *Mead v. Andersen*, 309 F. Supp. 2d 596, 598 (S.D.N.Y. 2004) (dismissing Section 502(a)(3) claim because "it is inappropriate to include a § 502(a)(3) claim which, as here, merely duplicates the § 502(a)(1) claim"); *Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413, 432 (S.D.N.Y. 2003) (dismissing Section 502(a)(3) claim where based on relief requested, plaintiffs' "claims can be fully satisfied under § 502(a)(1)(B), without resort to any additional equitable relief"; thus, "there is no need for Plaintiffs' [Section 502(a)(3)] claim"); *Levin v. Credit Suisse, Inc.*, 2013 WL 1296312, at *3 (S.D.N.Y. Mar. 19, 2013) (dismissing Section 502(a)(3) claim that was "duplicative" of the Section 502(a)(1)(B) claim); *Klecher v. Metro. Life Ins. Co.*, 331 F. Supp. 2d 279, 286-89 (S.D.N.Y. 2004) (denying leave to amend to add a Section

### B.    Plaintiff's Boilerplate Requests for Equitable Relief Do Not Make His Section 502(a)(3) Claims Appropriate.

The relief that Plaintiff seeks includes "equitable and injunctive relief sufficient to remedy Defendant's unlawful conduct," "reformation," and "further equitable relief against Cigna including a surcharge."  (FAC at 25, Prayer for Relief, subsections (d)-(f).)  These boilerplate demands do not mean that Plaintiff's Section 502(a)(3) claim is proper for two reasons.

First, while styled as requests for equitable relief, they still boil down to requests for money damages.  For example, in seeking "equitable and injunctive relief," what Plaintiff actually seeks is an order to compel Cigna to "approve **reimbursement** of class member claims for diagnostic Covid-19 testing, and/or **tender payment** therefor" (FAC at 25, subsection (d)(1))—plainly a request for more money.  The same thing is true with respect to Plaintiff's remaining equitable and injunctive relief requests under this subsection.  (*Id.*, subsection (d)(2)-(3) (demanding a judgment to compel Cigna to "provide adequate notice" and "conduct full and fair review"—but for both, requesting that "in the alternative, [Cigna] **cover** [*i.e.*, reimburse] such claims.").)

But money damages like the additional reimbursement that Plaintiff seeks are not a remedy that Section 502(a)(3) authorizes.  That is because "money damages are, of course, the classic form of *legal*"—not equitable—"relief."  *See Knudson*, 534 U.S. at 210 (emphasis in original).  And the Supreme Court has been quite clear that when an ERISA plaintiff seeks a sum of money from a defendant, that is a bid for money damages, no matter what label the plaintiff uses.  *See id.*

---

502(a)(3) claim as futile, because "whereas *Varity* holds that the 'catchall' provision applies when ERISA elsewhere does not provide a remedy for a wrong, plaintiff here brings an 'ordinary' denial of benefits claim for which § 1132(a)(1)(B) provides a remedy."); *LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*, 361 F. Supp. 3d 348, 357 (E.D.N.Y. 2019) (dismissing Section 502(a)(3) claim because "as in *Frommert*, plaintiff's claims here are couched in equitable terms, but the essence of plaintiff's claim in this case is one for monetary compensation, as reflected by the identical nature of the relief sought for both plaintiff's § 502(a)(3) claim and plaintiff's § 502(a)(1)(B) claim").

("*Almost invariably* . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.").

An opposite rule would allow an ERISA plaintiff to bring what is really a benefits claim under the guise of a Section 502(a)(3) claim by simply asserting that he seeks equitable relief— even when what plaintiff is really after is monetary compensation.  But the limitations of Section 502(a)(3) cannot be avoided so easily, particularly given that the Supreme Court "has consistently disfavored the expansion of the availability of equitable relief where remedies at law are sufficient." *Frommert*, 433 F.3d at 270.

That is exactly why courts look past labels to determine the true nature of the relief.  *See, e.g.*, *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label.").  And that is also why courts routinely find that simply labeling something as "equitable" relief does not magically make it so.  In *Frommert*, for example, the Second Circuit rejected such attempts at artful pleading—finding that "while the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."  433 F.3d at 270. Other Second Circuit decisions have adopted the same approach.  *See Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 119 (2d Cir. 2009) (noting that "§ 1132(a)(3) only applies to claims for injunctive relief, and despite Kendall's assertions to the contrary, many of Kendall's claims are effectively claims for money damages outside the scope of § 1132(a)(3)"), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 154 (2d Cir.

2014) (affirming dismissal and noting that "even though Central States labeled Claims I and II as ones for declaratory and injunctive relief, the claims seek money damages. [ . . . ] Litigants are not at liberty to plead around ERISA's limitations by resorting to common law or declaratory judgment claims.").

District courts in this circuit have likewise followed this instruction to look past labels, and to critically evaluate whether plaintiff is actually seeking true equitable relief or is simply seeking money damages dressed up in equity garb. And when the latter is true, dismissal is the answer. *See, e.g.*, *LI Neuroscience*, 361 F. Supp. 3d at 357 ("As in *Frommert*, plaintiff's claims here are couched in equitable terms, but the essence of plaintiff's claim in this case is one for monetary compensation"); *Staten Island*, 2012 WL 832252, at \*10-11 (finding that "although styled as requests for equitable relief . . . the plaintiffs are simply recasting their claims for the provision of benefits"); *Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 487-88 (S.D.N.Y. 2004) (acknowledging that several of plaintiff's requested remedies "on their face appear to be equitable in nature"—including a declaration, a permanent injunction, and restitution and/or disgorgement—but still finding that "plaintiff can label these claims whatever she likes, but they merely duplicate her claim for a refund as pleaded in Count I"), *aff'd*, 164 F. App'x 75 (2d Cir. 2006); *Plastic Surgery Grp.*, 64 F. Supp. 3d at 470-71 (finding that "despite plaintiff's request for declaratory and injunctive relief in the complaint, the claims are plainly legal claims for money damages").

Just like in the above cases, what Plaintiff really seeks here is to be paid more for the disputed COVID-19 tests than what he has already received. Whether he labels that request as one for additional "reimbursement" for the disputed COVID-19 testing claims, or for Cigna to "tender payment," or for Cigna to "cover such claims" (FAC at 25, Prayer for Relief), the end result is the same—more money in Plaintiff's pocket. The "gravamen of this action" thus "remains a claim for

-12-

monetary compensation." *See Frommert*, 433 F.3d at 270.  And so dismissal is proper for either or both of the following reasons: (1) the supposedly equitable relief that Plaintiff seeks is duplicative of the relief he seeks under his ERISA benefits claim; and (2) the supposedly equitable relief that Plaintiff seeks is nothing more than money damages, which are not available under Section 502(a)(3).  At bare minimum, the Court should dismiss Plaintiff's Section 502(a)(3) claims to the extent they seek money damages—which they indisputably do.  *See Knudson*, 534 U.S. at 210 ("money damages are, of course, the classic form of legal relief"); *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 285 F. Supp. 2d 382, 388 (S.D.N.Y. 2003) ("compensatory damages, even if they resulted from a breach of fiduciary duty, are not recoverable as equitable relief under § 1132(a)(3)"), *aff'd*, 404 F.3d 167 (2d Cir. 2005); *Klecher*, 331 F. Supp. 2d at 288 ("A claim for money damages is not one for equitable relief").

Second, to the extent Plaintiff truly seeks an injunction or other equitable relief (rather than money damages) to require Cigna to reprocess prior disputed COVID-19 testing claims and to pay those claims a certain way going forward, that too is relief available under Section 502(a)(1)(B)— which likewise means that there is no need to resort to Section 502(a)(3) to provide that relief.[4]

Section 502(a)(1)(B) authorizes courts to issue orders "to recover benefits due to [plaintiff] under the terms of his plan" (for past claims) and "to clarify [plaintiff's] rights to future benefits under the terms of the plan" (for future claims).  There is thus no need for equitable relief that would direct Cigna to pay the disputed claims a certain way, because that same relief is already available under Section 502(a)(1)(B).  *See Varity*, 516 U.S. at 512 (Section 502(a)(1)(B)

---

[4] To the extent Plaintiff may argue that an injunction that orders Cigna to pay benefits due under the plan is equitable relief, the Supreme Court has rejected this position.  *See Knudson*, 534 U.S. at 210 ("an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity.").

"specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims"); *Keir v. Unumprovident Corp.*, 2010 WL 3566878, at \*8 (S.D.N.Y. Sept. 14, 2010) (granting summary judgment on Section 502(a)(3) claim because plaintiff's "request for equitable relief . . . namely, that Unum 'reevaluate' their claims and 'render disability payments' to those whose claims were incorrectly denied—is precisely the type of relief that is available under ERISA § 502(a)(1)(B)").

Finally, at the pre-motion conference, Plaintiff argued that he should be allowed to pursue his benefits claims and his equitable relief claim together until it becomes clear (presumably at summary judgment or trial) whether he is able to prevail on either or both of those claims. That argument misses the point. Plaintiff here has ***not*** stated valid claims under both Section 502(a)(1)(B) and Section 502(a)(3) such that he should be allowed to pursue them until there is a resolution on the merits. To the contrary, he has not pled a valid claim under Section 502(a)(3) because the relief he seeks is money damages (which are not an available remedy) and because the availability of the same relief under Section 502(a)(1)(B) means that is it not "appropriate" for him to simultaneously pursue that same relief under Section 502(a)(3). *See LI Neuroscience Specialists*, 361 F. Supp. 3d at 357-58 (rejecting same argument and explaining that "the possibility of pursuing both claims simultaneously is not at issue, because the Court concludes that plaintiff is not seeking equitable relief at all, but rather seeks the balance of the billed and unreimbursed medical expenses—the exact same relief sought in plaintiffs § 502(a)(1)(B) claim."). Nor is there any need to potentially expand discovery beyond the administrative record here, given that as explained above, Plaintiff's claims are fundamentally about his disagreement with the way that Cigna reimbursed the claims at issue—*i.e.*, a garden-variety benefits claim.

*        *        *

In short, the equitable buzzwords that Plaintiff uses in his complaint should not obscure the fact that Plaintiff is really after additional benefits—*i.e.*, more money.  That relief is not available under Section 502(a)(3).  And to the extent Plaintiff truly does seek injunctive or other equitable relief (rather than pure money damages) that would compel Cigna to reimburse the disputed claims in a particular way, Section 502(a)(1)(B) already authorizes that relief—which means that there is no need to resort to the catchall Section 502(a)(3) provision.  The portion of Count I that seeks recovery under Section 502(a)(3) should thus be dismissed.

## II.    Plaintiff's Section 502(a)(3) Claims for Allegedly Inadequate EOBs (Count II) and Full and Fair Review (Count III) Should Be Dismissed.

In Count II, Plaintiff brings claims under both Section 502(a)(3) and Section 502(a)(1)(B) to challenge the adequacy of EOBs that Cigna provided for the disputed COVID-19 testing claims. (FAC ¶¶ 90-98.)  In Count III, Plaintiff likewise brings claims under both Section 502(a)(3) and Section 502(a)(1)(B) to challenge Cigna's benefits determinations as supposedly not providing full and fair review.  (Count III, FAC ¶¶ 99-108.)  Plaintiff's Section 502(a)(3) claims under both Counts II and III should be dismissed.

Both these counts are premised on alleged violations of ERISA § 503.  (*See id.* ¶ 92 (for the EOB claim, relying on 29 U.S.C. § 1133(1); *id.* ¶ 101 (for the full and fair review claim, relying on 29 U.S.C. § 1133(2)).)  And to make out a plausible Section 502(a)(3) claim based on an underlying Section 503 violation, Plaintiff must clear two separate hurdles: (1) establish that the Section 502(a)(3) claim is "appropriate" under *Varity* and that it seeks proper equitable relief rather than impermissible money damages; and (2) establish an underlying ERISA violation to support the Section 502(a)(3) claim.  *See, e.g.*, *Miller v. Int'l Paper Co.*, 2013 WL 3833038, at *4 (S.D.N.Y. July 24, 2013) ("While ERISA § 502(a)(3) provides a vehicle for seeking equitable

relief, in order to bring a claim pursuant to this Section, a plaintiff must also allege an underlying violation of some substantive provision of ERISA."). Plaintiff cannot satisfy either prong.

First, the FAC makes it clear that for both the EOB theory and the full-and-fair review theory, Plaintiff simply wants Cigna to pay more for the disputed claims rather than address any supposed procedural deficiencies. (*See* FAC at 25, Prayer for Relief, at subsections (d)(2)-(3) (for both theories, requesting as alternative relief that Cigna "cover such claims").) But once again, where the alleged injury is that defendant's supposed failure to follow proper claims procedures resulted in an improper denial of benefits—exactly what Plaintiff alleges here—that too is relief available under Section 502(a)(1)(B), which means that a Section 502(a)(3) claim is inappropriate. *See Biomed Pharms.*, 775 F. Supp. 2d at 738 ("since the gravamen of the three challenged ERISA [Section 502(a)(3)] claims is that Oxford failed to follow proper procedures in denying the Patient's claim for benefits, which resulted in an improper denial of benefits owed to the Patient under the terms of the Plan, adequate relief for these claims is plainly available under Section 502(a)(1)(B)"); *Staten Island*, 2012 WL 832252, at *11 (following *Biomed* and holding that "the thrust of the complaint in this case is that the defendants have failed to follow proper procedures," which allegedly "resulted in an improper denial of benefits," which means that adequate relief is "available under Section 1132(a)(1)(B)"); *LI Neuroscience*, 361 F. Supp. 3d at 356-57 (dismissing Section 502(a)(3) claim as duplicative of Section 502(a)(1)(B) because although plaintiff based it on alleged problems with defendant's "handling of the administrative appeals," the "essence of the claim is one for damages for alleged underpayment").

As this Court previously explained, appropriate equitable relief for a Section 503-based claim would typically involve a "remand to the plan administrator." *See Levi v. RSM McGladrey, Inc.*, 2014 WL 4809942, at *10 n.24 (S.D.N.Y. Sept. 24, 2014) (Ramos, J.) (citing *Krauss v.*

*Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review.")). Tellingly, though, the FAC here does not seek any such remand. (*See generally* FAC.)

This lack of a request for remand is further proof that what Plaintiff really wants is not true equitable relief but money damages. In *Levi*, for example, this Court noted that "at present, Plaintiff is not asking the Court to remand the proceedings for further review by the plan administrator, but instead is attempting to assert a claim for monetary relief under section 1132(a). In other words, the current pleadings do not suggest that Plaintiff is seeking equitable relief from the perceived procedural inadequacies themselves, but rather that he is focused exclusively on obtaining *monetary* relief for the denial of COBRA benefits that, according to Plaintiff, those procedural inadequacies helped perpetuate." 2014 WL 4809942, at *10 n.24 (emphasis in original). Just so here: while the FAC pays lip service to alleged procedural deficiencies in how Cigna processed the disputed claims at issue, the real thrust is that those alleged deficiencies supposedly caused Plaintiff's claims to be underpaid—which, again, means money damages that are not available under Section 502(a)(3).

Second, Plaintiff's Section 502(a)(3) claims in Counts II and III also fail for another reason: they are premised on alleged violations of Section 503, but Plaintiff cannot show an underlying violation of that statute. As Cigna previously pointed out in its pre-conference letter (ECF No. 18 at 2), Section 503 only imposes obligations on "employee benefit *plan[s]*." 29 U.S.C. § 1133; *see Am. Med. Ass'n v. United Healthcare Corp.*, 2002 WL 31413668, at *9 (S.D.N.Y. Oct. 23, 2002) ("[Section] 503 is inapplicable to a plan administrator" because it "specifically refers to the duties of plans, not plan administrators.").

Here, though, Plaintiff acknowledges that an entity other than Cigna (The Educational Alliance) is his plan. (FAC ¶¶ 8-10; *accord* FAC Ex. A (SPD) at 92 ("The name of the Plan is: The Educational Alliance.").) Because Plaintiff cannot establish an underlying violation of Section 503, he cannot maintain a Section 502(a)(3) claim based on such a violation. *See Plastic Surgery*, 64 F. Supp. 3d at 472 (dismissing "any possible [ERISA] § 503 claim" because the plaintiff did not, nor could it, allege that any of the claims-administrator defendants were the "plans"); *Gates*, 2012 WL 2953050, at *11 (dismissing Section 503 claim because "numerous courts have ruled that [Section 503] does not create liability for administrators, including claims administrators like United here."); *RJ v. Cigna Behav. Health, Inc.*, 2021 WL 1110261, at *6 (N.D. Cal. Mar. 23, 2021) (agreeing with Cigna that "a section 1133 claim can only be asserted against a plan, and Cigna is not the Plan," and dismissing claim).

In his pre-conference letter, Plaintiff argued that *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) allows him to maintain Section 502(a)(3) claims against Cigna because the Supreme Court in that case held that "§ 502(a)(3) admits of no limit . . . on the universe of possible defendants." (ECF No. 19 at 2 (quoting *Harris Trust*, 530 U.S. at 245).) That is true enough with respect to Section 502(a)(3), but *Harris Trust* does not change the fact that **Section 503** does have such a limit.

In *Gates*, plaintiff made the same argument in pursuing a Section 502(a)(3) claim based on an alleged violation of Section 503 against United Health Group (likewise a non-plan defendant). The Court rejected this argument, noting that the fact that "under Section 502(a)(3) [and *Harris Trust*], plaintiff is entitled to pursue equitable relief against any defendant for violation of ERISA . . . **does not** relieve her from having to establish an underlying violation of the statute." 2012 WL 2953050, at *11. And as that Court held, "because [Section 503] only imposes

-18-

obligations on 'plan[s]' . . . plaintiff cannot establish an underlying 503 violation . . . for purposes of 502(a)(3) liability." *Id.*

The same outcome should follow here, since Cigna is not the plan either. And without an underlying violation of Section 503, Plaintiff's Section 502(a)(3) claims based on alleged violations of Section 503 should be dismissed. *See Metro. Life Ins. Co. v. Sicoli & Massaro Inc.*, 2016 WL 5390899, at *8 (S.D.N.Y. Sept. 26, 2016) ("Because a claim for equitable relief under Section 502(a)(3) must be based on an underlying ERISA violation, Plaintiff's claims for equitable relief under Section 502(a)(3) will be dismissed."); *Gates*, 2012 WL 2953050, at *11 (dismissing Section 502(a)(3) claim where "plaintiff cannot establish an underlying [ERISA] violation").

## CONCLUSION

For the foregoing reasons, the Court should grant Cigna's motion and dismiss Plaintiff's claims under Section 502(a)(3) in Counts I, II, and III with prejudice.

Dated:  November 14, 2022
        New York, New York

Respectfully submitted,

By:  */s/ Dmitriy Tishyevich*
    Joshua B. Simon
    Warren Haskel
    Dmitriy Tishyevich
    Richard Diggs
    **McDermott Will & Emery LLP**
    One Vanderbilt Avenue
    New York, New York 10017-3852
    Tel: (212) 547-5400
    Fax: (212) 547-5444

    *Attorneys for Defendant Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notice of the filing to counsel of record.

*/s/ Dmitriy Tishyevich*
Dmitriy Tishyevich

-20-