# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

JEREMY HOCKENSTEIN, for himself and
all others similarly situated,

                                        Plaintiff,


                    -against-


CIGNA HEALTH AND LIFE INSURANCE
COMPANY,

                                        Defendant.

---

Civil Case Number: 1:22-cv-04046-ER


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ERISA § 502(a)(3) CLAIMS


Gabriel Posner, Esq.
POSNER LAW PLLC
50 Main St., Suite 1000
White Plains, New York 10606
Phone: 914-517-3532
gabe@Posner.Law

*Counsel for Plaintiff*

## Table of Contents

OVERVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    The FFCRA and Cares Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    Plaintiff's ERISA Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    Plaintiff's Covid Tests and Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

A NOTE ON PLEADING EACH COUNT
UNDER TWO CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

    Pleading Factual Allegations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

    Pleading the Statutory Provision Granting a Cause of Action. . . . . . . . . . . . . . .   11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

    *I.*    *The FAC's Count I Claims under*
        *ERISA § 502(a)(3) Should Not be Dismissed.* . . . . . . . . . . . . . . . . . . . . . . .   11

        A.  The FAC Plausibly Alleges Plaintiff
            Cannot Obtain Relief Under § 502(a)(1)(B),
            Which Solely Allows Claims "Under the Terms of the Plan". . . . . . .   13

        B.  The FAC Plausibly Alleges Plaintiff
            Can Obtain Relief Under § 502(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . .   15

    *II.*   *Counts II and III Claims under*
        *ERISA § 502(a)(3) Should Not be Dismissed.* . . . . . . . . . . . . . . . . . . . . . . .   23

        A.  Counts II and III Are Not Duplicative of
            Plaintiff's Claims for Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . .   23

        B.  Counts II and III Assert an Underlying Violation of ERISA . . . . . . . .   24

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

## **Table of Authorities**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3n, 10

*Briscoe v. Health Care Service Corporation*,
281 F.Supp.3d 725 (N.D. Ill. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Cigna Corp. v. Amara*, 563 U.S. 421 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 22

*Devlin v. Empire Blue Cross & Blue Shield*,
274 F.3d 76 (2d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . .   19n

*Harris Trust and Savings Bank v. Salamon Smith Barney Inc.*,
530 U.S. 238 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 25

*Gallagher v. Empire HealthChoice Assurance, Inc.*,
339 F.Supp.3d 248 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19-20

*Gates v. United Health Grp. Inc.*,
2012 WL 2953050 (S.D.N.Y. July 16, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Heimeshof v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Kennedy v. Plan Administrator for
DuPont Savings and Investment Plan*, 555 U.S. 285 (2009) . . . . . . . . . . . . . . . . . . .   13n

*Larson v. United Healthcare Insurance Co.*,
723 F.3 905 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13n, 16, 22

*Laurent v. PriceWaterhouseCoopers LLP*,
945 F.3 739 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 22

*LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*,
361 F.Supp.3d 348 (EDNY 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*New York Psychiatric Ass'n Inc. v. UnitedHealth Grp.*,
798 F.3d 125 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

*Sacerdote v. New York University*, 9 F.4th 95 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . .   3n, 10

*Sullivan Mestecky v. Verizon Communications Inc.*,
961 F.3d 91 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999) . . . . . . . . . . . . . . . . . . . . . . .   13n

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 15-16, 18

Plaintiff Jeremy Hockenstein, by undersigned Counsel, respectfully submits this memorandum of law in opposition to Defendant Cigna Life and Health Insurance Company's ("Cigna") partial motion to dismiss the First Amended Complaint ("FAC" at ECF 17).

## OVERVIEW

The Coronavirus Aid, Relief, and Economic Security Act Pub. L. 116-134 (the, "CARES Act") requires insurers and group health plans to provide full coverage, with no copay or other cost sharing, of diagnostic Covid-19 tests.  FAC ¶ 14.  Plaintiff Jeremy Hockenstein's ERISA health benefits plan (the, "Plan") does not appear to provide such a benefit.  *Id.* ¶ 15.  Cigna determines benefits payments under the Plan.  *Id.* ¶ 12.  Cigna has discretion to approve benefits beyond those specified in the Plan.  *Id.* ¶ 13.  Plaintiff obtained and paid for several Covid-19 tests for himself and his dependents.  *Id.* ¶¶ 16-19; 32-33.  Cigna denied Plaintiff full reimbursement. *Id.* ¶¶ 22; 32-33.

Cigna initially claimed in its explanation of benefits ("EOB") that full reimbursement was not warranted because it had negotiated a discount with the provider.  In fact, there was no discount; Plaintiff was charged and paid full price.  Plaintiff appealed to Cigna, but Cigna denied Plaintiff's appeals and affirmed its reduced reimbursement rate – only this time based upon a generic coverage limitation, the "Maximum Reimbursable Charge." *Id.* ¶¶ 22-28; 37-39.

Plaintiff brings this action under ERISA for himself and putative class members seeking, as set forth more fully in the FAC, the following relief.  **Count I** seeks to compel Cigna to approve reimbursement for Covid tests in accordance with federal law.  **Count II** seeks to compel Cigna to truthfully explain the basis on which it denies Plaintiff's claims for reimbursement.  **Count III** seeks to compel Cigna to conduct a full and fair review of Plaintiff's appeal.  *See,* FAC ¶ 54 (summarizing claims).

Plaintiff alleges each count under *both* ERISA § 502(a)(1)(B) and ERISA § 502(a)(3).  The former provision allows Plaintiff to sue in court to obtain benefits and rights he is afforded "under the terms of his Plan."   The latter provision, ERISA § 502(a)(3), allows Plaintiff to obtain "appropriate equitable relief" for violations of ERISA or the terms of a plan, including breaches of fiduciary duty.  Cigna does not challenge, on the instant motion, Plaintiff's claims under ERISA § 502(a)(1)(B).  Cigna moves to dismiss all claims asserted under ERISA § 502(a)(3).[1]  Cigna raises four arguments:

    a.    Count I fails to state a claim under § 502(a)(3), because it seeks reimbursement of Covid test claims, which Plaintiff could pursue as "a benefit under the Plan" under ERISA § 502(a)(1)(B).   Section 502(a)(3) is limited to claims for, "*appropriate* equitable relief," and where another ERISA provision can be invoked, a § 502(a)(3) remedy is not "appropriate."  Cigna cites *Varity Corp. v. Howe*, 516 U.S. 489 (1996) and its progeny.

    b.    Count I fails to state a claim under § 502(a)(3), because in seeking reimbursement for Covid testing claims, it seeks in substance money damages, regardless of the labels the FAC may use, and money damages are not available under § 502(a)(3).

    c.    Counts II and III fail to state a claim under § 502(a)(3), because their request for procedural relief – accurate EOB's and "full and fair review" of claims denials – is, in substance, a request for money and as noted above, a claim that requests money damages is duplicative of § 502(a)(1)(B) and cannot be brought under § 502(a)(3) anyway.

    d.    Counts II and III fail to state a claim under § 502(a)(3) because they do not allege an underlying violation of ERISA.  The purported violations – failure to furnish EOB's and conduct "full and fair review" – are incumbent on the "Plan" under § 503, and Cigna is not, "the Plan."

As addressed more fully herein, Cigna's arguments fail for numerous reasons.

Preliminarily, Cigna's brief omits Second Circuit authority which is contrary to its position.

Plaintiff's claim here is indistinguishable from that upheld by the Second Circuit in *New York*

---

[1] Cigna does not move to dismiss any Count *in toto*, because all of the Counts are brought under *both* ERISA §§ 502(a)(1)(b) and 502(a)(3).

*Psychiatric Ass'n Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015): An insurer who, acting

as a claims processor for an ERISA plan, denied reimbursement for healthcare benefits in violation

of minimum coverage standards required by another federal statute – there, the Parity Act, here,

the CARES Act. *N.Y. Psychiatric Ass'n* specifically:

- **Allowed** plaintiffs' § 502(a)(3) claim to proceed, and **rejected** the argument that, "it would not be 'appropriate' for the plaintiffs to obtain relief under § 502(a)(3) if § 502(a)(1)(B) offered an adequate remedy." *Id.*, 798 F.3d at 129. The court thus rejected Cigna's leading argument here.

- Held that plaintiff's claim for cash payment could be plausible under § 502(a)(3) on grounds the payment was equitable in nature, such as "surcharge," rather than money damages. This contradicts Cigna's second and third arguments here.

- Held that defendant United, an insurance company claims processor, could be held liable under § 502(a)(3) for violations of a statutory provision which, by its explicit terms, did not apply to United but rather to the Plan. This contradicts Cigna's final argument here that § 503 (requiring EOB's and "full and fair review") is inapplicable to it.

Plaintiff pre-motion letter (ECF 19) quoted extensively from *N.Y. Psychiatric Ass'n*, but Cigna's

brief does not mention it.

For the reasons set forth more fully below, Cigna's motion to dismiss ERISA claims under

§ 502(a)(3) should be denied.

## **FACTS[2]**

### *The FFCRA and the CARES Act*

In March 2020 Congress passed two statutes to confront the emerging Covid-19 pandemic.

On March 18, 2020, the President signed into law the Families First Coronavirus Response Act,

Pub. L. 116-127 (the "FFCRA"), and on March 27, 2020, the Coronavirus Aid, Relief, and

Economic Security Act Pub. L. 116-134 (the, "CARES Act"). FAC ¶ 14. The legislation expressly

---

[2] Facts alleged in the FAC are taken as true on a motion brought under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Sacerdote v. New York University*, 9 F.4th 95, 106-07 (2d Cir. 2021).

recognized a national "emergency," and embodied Congress's multi-trillion dollar[3] response to the looming crisis.  Two provisions of these statutes are relevant here, which, taken together, require ERISA plans and health insurers to cover the full cost of Covid-19 diagnostic testing, without any co-pay or cost sharing, regardless of whether the provider is in-network or out-of-network.  *Id*.  Section 6001(a) of the FFCRA provides:

> ### Sec. 6001.  Coverage of Testing for Covid-19.
>
> (a) In General.  A group health plan and a health insurance issuer offering group or individual health insurance coverage… shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the emergency period …
>
>> (1) In vitro diagnostic products… for the detection of SARS-CoV-2 or the diagnosis of the virus that causes COVID-19…

Supplementing the FFCRA, section 3202(a) of the CARES Act mandated reimbursement for Covid tests at either a rate negotiated with the provider, or, in the absence thereof, the provider's full posted rate:

> ### Sec. 3202.  Pricing of Diagnostic Testing
>
> (a) Reimbursement Rates.  A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of … the Families First Coronavirus Response Act (Public Law 116-127) with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:
>
>> (1) If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.
>>
>> (2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall

---

[3] Congressional Budget Office Report, *Preliminary Estimate of the Effects of H.R. 748, the CARES Act…*, April 27, 2020, available at:
https://web.archive.org/web/20210215175708/https://www.cbo.gov/system/files/2020-04/hr748.pdf.

> reimburse the provider in an amount that equals the cash price
> for such service as listed by the provider on a public internet
> website, or such plan or issuer may negotiate a rate with such
> provider for less than such cash price.

The statues have always been understood to mean what they say.  For example, the Departments

of Labor, Health and Human Services, and Treasury jointly posted on the Internet on April 11,

2020:[4]

> the FFCRA generally requires group health plans… to provide
> benefits… related to diagnostic testing for… COVID-19… without
> imposing any cost-sharing requirements (including deductibles,
> copayments, and coinsurance)…  section 3202 of the CARES Act
> generally requires plans and issuers … to reimburse any provider
> of COVID-19 diagnostic testing an amount that equals the
> negotiated rate or, if the plan or issuer does not have a negotiated
> rate with the provider, the cash price for such service that is listed
> by the provider on a public website.

Cigna does not contest on the instant motion that federal law requires full coverage of diagnostic

Covid-19 tests both in- and out-of-network.

***Plaintiff's ERISA Plan***

Plaintiff's spouse obtained healthcare benefits through her employer, The Educational

Alliance, under an ERISA-governed plan.  FAC ¶¶ 8-10.  The Plan provides healthcare benefits as

described in a "Summary Plan Description ("SPD") which is attached to the FAC as Exhibit A.

*Cf. id.* ¶ 12 (describing SPD).  Plaintiff and his dependents are named beneficiaries under the Plan.

*Id.* ¶¶ 10, 32.  The SPD makes no reference to benefits or coverage for Covid testing as such.  FAC

¶ 15.  "The Schedule" in the SPD (FAC Ex. A at p. 24) lists reimbursement rates for health services.

The benefit provided for "Diagnostic Related Services" is set forth as: "Subject to the Plan's… lab

benefit; based on place of service."  *Id.* at p. 28.

---

[4] Available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-51.pdf

Under the Plan, Cigna is charged with "discretionary authority" to interpret and apply Plan terms, including to determine benefits payments (*id.* ¶ 12, quoting the SPD):

> The Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms.... Such discretionary authority is intended to include, but not limited to… the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments.

The Plan further delegates to Cigna discretionary authority to conduct "full and fair review" of claims determinations under ERISA (*id.*):

> The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

The Plan grants Cigna broad discretion to approve health benefits beyond those mandated in the Plan documents.  FAC ¶ 13 (quoting the SPD):

> We [i.e., Cigna] may, from time to time, offer or arrange for various entities to offer discounts, benefits, or other consideration to our members for the purpose of promoting the general health and well being of our members.  We may also arrange for the reimbursement of all or a portion of the cost of services provided by other parties to the Policyholder.

The Plan further charges Cigna with the obligation to communicate its claims determinations to beneficiaries, typically in the form of an "Explanation of Benefits" or "EOB."  Citing the SPD, the FAC alleges (*id.* ¶¶ 20-21) (adding emphasis):

> When you or your representative requests a coverage determination or a claim payment determination after services have been rendered, **Cigna** will notify you or your representative of the determination …

Where Cigna denies a claim in whole or in part – an "adverse" determination – the referenced notice will contain enumerated information, which tracks federal regulations promulgated under ERISA (*id.* ¶ 20; *see also,* 29 CFR § 2560.503-1).

**Notice of Adverse Determination**

Every notice of an adverse benefit determination will be provided in writing or electronically, and will include all of the following that pertain to the determination:… the specific reason or reasons for the adverse determination including, if applicable, the denial code and its meaning and a description of any standard that was used in the denial; reference to the specific plan provisions on which the determination is based…

Instructions for filing a claim for Plan benefits appear on page 19 of the SPD.  *See*, FAC Ex. A. For out-of-network care, beneficiaries may use Cigna's website portal.  Claims for out-of-network benefits are timely if filed within 180 days.  *Id*.[5]

***Plaintiff's Covid Tests and Claims***

On January 16, 2022, named Plaintiff appeared in person at Rapid Test Center in New York, New York, an out-of-network provider operated by Dr. Stuart B. Weiss, MD.  Plaintiff paid $250 for a diagnostic Covid-19 test, and thereafter, timely submitted a claim to Cigna for full reimbursement.  FAC ¶¶ 16-19.  Cigna approved and paid reimbursement in the amount of $51.31, but otherwise denied the claim.  *Id*. ¶ 19.  Cigna's EOB for the claim explained (emphasis original):

| Discount | $198.69 | **You saved $198.69.**  Cigna negotiates discounts with health care professionals and facilities to help you save money. |
|---|---|---|

FAC ¶ 22; FAC Ex. B.  The EOB further states (FAC Ex. B):

| You saved | 100% | You saved $250 (or 100%) off the total amount billed.  This is the total of your discount and what your Cigna plan paid. |
|---|---|---|

The EOB was false.  Plaintiff paid the full $250 price to the provider at the time he obtained the Covid test.  There was no discount.  FAC ¶¶ 23-25.

---

[5] Cigna also insures the Plan (FAC ¶ 8).  This is different than determining Plan benefits.  In a, "self-funded" plan, an employer can forgo insurance and pay all healthcare costs, but still have the benefit of Cigna's network of providers, negotiated rates, and claims handling services.  Cigna explains the various models on its website (visited 11/29/2022): https://www.cigna.com/employers/cost-control/funding-solutions

Plaintiff appealed Cigna's claim determination by letter to Cigna dated February 4, 2022. FAC ¶ 26.  Plaintiff wrote (*id.*) (emphasis original):

> I am submitting this Grievance to request that you cover the <u>full</u> cost of $250 for the out-of-network covid test I received on January 16, 2022, provided by Dr. Stuart B. Weiss.  Cigna appears to have provided partial coverage (about $53) for this test, leaving us to cover the remainder of the cost.  The claim ID for my covid test is …. Cigna writes in the explanation of benefits that it negotiated a discount for this service, but that is not true.  I paid the full $250 charged by the provider.  Please reimburse us the full $250.  Under the CARES Act, this test should be fully covered, even though the provider was out-of-network.  Additionally could you please provide Cigna's policies for covering out-of-network covid tests.  I do not see this issue addressed in my plan documents.

Cigna denied Plaintiff's appeal by letter dated March 3, 2022.  FAC ¶ 28; FAC Ex. C.  In determining Plaintiff's appeal, Cigna claimed to have reviewed, "All the information in your file, the information submitted with the request, and the terms of your benefit plan."  (Letter at FAC Ex. C p. 1).  Cigna did not claim in its letter to have reviewed the CARES Act nor to have formed any opinion about it.  Cigna also did not claim to have reviewed whether it did, or did not, negotiate a discount with the provider.  FAC ¶¶ 30-31.

Pointing to a provision for *general* plan exclusions – that is, a provision that would limit reimbursement for *any service* – Cigna wrote that reimbursements were capped at the "Maximum Reimbursable Charge," a defined term under the Plan:

> According to your the Educational Alliance Certificate under the section Titled 'Exclusions and Limitations of Coverage', it states that:
>
> Limitations of Coverage
>
> No payment will be made for expenses incurred for you or anyone of your Dependents:
> - To the extent that they are more than the Maximum Reimbursable Charges.

Cigna explained (to a limited extent) how the Maximum Reimbursable Charge is determined:

> We use a methodology similar to Medicare to determine reimbursement for the same or similar service within a geographic market.  Because we don't have any information that supports a reason to pay more than the Maximum Reimbursable Charge, we won't pay anything more towards this claim.
>
> …
>
> The Maximum Reimbursable Charge for covered services is determined based on the lesser of:
>
> - The provider's normal charge for a similar service or supply; or
> - A policyholder-selected percentage of a schedule developed by Cigna that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for the same or similar service within the geographic market.

Cigna's letter failed to offer any further clarity on how Cigna arrived at the reimbursement rate of $51.31, and says nothing about the CARES Act.  FAC ¶¶ 40-41.

Plaintiff had previously had similar difficulties obtaining coverage from Cigna for Covid tests.  FAC ¶¶ 32-39.  In September 2021, Plaintiff and two of his dependents obtained Covid tests from Rapid Test Center.  For these tests, as well, Plaintiff had paid in full; submitted claims to Cigna for reimbursement; for which Cigna denied full reimbursement – although at inconsistent rates; after which Plaintiff appealed to Cigna, citing the CARES Act and requesting full reimbursement; in response to which Cigna denied Plaintiff's appeals, in substantially the same form letter as attached to the FAC as Ex. C.  FAC ¶¶ 32-39.

Cigna's appeal responses to Plaintiff stated that internal remedies had been exhausted, and further claims for relief, if any, could proceed in court.  Plaintiff filed this action on May 17, 2022.

### <u>A NOTE ON PLEADING EACH COUNT UNDER<br>TWO CAUSES OF ACTION</u>

Each count in the FAC is brought under *both* ERISA §§ 502(a)(1)(B) and § 502(a)(3).  This is appropriate, and Cigna has not raised any objection to this pleading format.

FRCP 10(b) requires separate counts for, "each claim founded on a separate transaction or occurrence." Here, each count pertains to a separate, "transaction or occurrence." Count I pertains to Cigna's failure to approve reimbursement; Count II to pertains to Cigna's issuing false EOB's; and Count III to Cigna's failure to conduct a full and fair review of Plaintiff's appeal. Rule 10 does not require a separate count for each statutory right of action. The complaint filed in *New York Psychiatric Ass'n Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015), included at least one count (Count III in that case) which was upheld by the Second Circuit, alleging violations under *both* ERISA § 502(a)(1)(B) and 502(a)(3).

## STANDARD OF REVIEW

### *Pleading Factual Allegations*

To survive a motion brought under FRCP 12(b)(6), the complaint, "must plead sufficient factual allegations… that, accepted as true, state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the complaint must allege, "more than labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action," plaintiff need not provide, "detailed factual allegations." *Twombly*, 550 U.S. at 555. Allegations "must be enough to raise a right to relief above the speculative level." *Id*. "In assessing the complaint, [the court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. New York University*, 9 F.4th 95, 106-07 (2d Cir. 2021). "[A] claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Id.*, at 107.

***Pleading the Statutory Provision Granting a Cause of Action***

An imperfect allegation of the statutory provision under which a cause of action arises is not grounds for dismissal (*Johnson v. City of Shelby*, 574 U.S. 10 (2014)), including, specifically, with respect to ERISA § 502(a)(3).  *N.Y. Psichiatric Ass'n*, 798 F.3d at 128 n.2 ("Although Count I of the amended complaint cites only to the Parity Act, we agree with the District Court that the plaintiffs brought Count I pursuant to § 502(a)(3)."); *see also*, *Harris Trust and Savings Bank v. Salamon Smith Barney Inc.*, 530 U.S. 238, 246 n.2 (2000) (excusing plaintiff's failure to, "pellucidly articulate [their] theory" under § 502(a)(3)).  A plaintiff is not required to allege, "a punctiliously stated 'theory of the pleadings,'" because the requirements of Fed. R. Civ. P. 8(a), "concern the *factual* allegations a complaint must contain."  *Johnson*, 530 U.S. at 12 (emphasis original).  "The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Id.*, quoting 5 C. Wright & A. Miller, § 1219, pp. 277-278 (3d ed. 2002).

## **ARGUMENT**

### I.    ***The FAC's Count I Claims under ERISA § 502(a)(3) Should Not be Dismissed***

Count I of the FAC alleges Cigna violated the terms of the Plan and of ERISA, including Cigna's fiduciary duties, by failing to approve full reimbursement for diagnostic Covid testing as required by the CARES Act.  Cigna does not challenge, on the instant motion, the FAC's claims insofar as arising under §502(a)(1)(B), but Cigna argues that Count I claims brought under § 502(a)(3) should be dismissed for **two** reasons:

- Plaintiff cannot pursue a claim under § 502(a)(3) if he can pursue a remedy under § 502(a)(1)(B), which, Cigna argues, Plaintiff can and should do here; and

- The Count I claim, though "labeled" a claim for equitable relief, is substantively a claim for money damages, which is not available under § 502(a)(3).

11

Cigna fundamentally misconstrues the FAC.  Plaintiff's § 502(a)(3) claims do not allege that any specific Plan term mandates full coverage of Covid-19 testing.  Rather, Plaintiff alleges that Cigna *has discretion* to approve such reimbursement, and that Cigna should exercise its discretion in a manner that conforms with federal law, specifically the CARES Act.  As a fiduciary, Cigna is obligated to do nothing less.

Cigna's brief jumps to the conclusion that Plaintiff's § 502(a)(3) claim is duplicative of § 502(a)(1)(B) without analyzing what Plaintiff's claim actually *is*.  Cigna's brief lacks a statement of facts, and does not even mention the CARES Act.  In contrast to the cases Cigna cites, plaintiff's claim under § 502(a)(3) is **not** simply a reformulation of a benefits-under-the-plan claim, **nor** is it a claim for money due and owing comparable to breach of contract.  Plaintiff's claim is the same as *N.Y. Psychiatric Ass'n*: There, as here, a claims processor denied reimbursement allegedly in violation of the minimum standards required by a federal statute (there, the Parity Act; here, the CARES Act), for which Plaintiffs alleged violations of § 502(a)(3).  In *N.Y. Psychiatric Ass'n*, the Second Circuit rejected **both** the arguments Cigna raises here, holding:

    (i)    Plaintiff's claim should not be dismissed as duplicative of §502(a)(1)(B), *i.e.*, for failure to seek "appropriate relief" under §502(a)(3) under *Varity Corp*; and

    (ii)    holding Plaintiff's claim should not be dismissed for seeking money damages under §502(a)(3).

Plaintiff's pre-motion letter cited extensively to this opinion, but Cigna's brief does not even mention it.  District courts have distinguished *N.Y. Psychiatric Ass'n* or limited its scope, but not in any way that is relevant here.  Cigna cites many cases where § 502(a)(3) claims really do merely "repackage" an (i) identical § 502(a)(1)(B) claim, (ii) and which really do seek money damages.  Cigna does not explain why those claims are similar to Hockenstein's.  They are not.  *N.Y. Psychiatric Ass'n* compels this Court to reject Cigna's arguments.

12

Importantly, the FAC's allegations under Section 502(a)(1)(B) are not relevant to assessing to Cigna's argument.  A pleading may contain alternate or inconsistent claims.  Fed. R. Civ. P. 8(d).  That the FAC alleges a claim under Section 502(a)(1)(B) does not necessarily mean such a claim will prevail, nor that Plaintiff is committed to that one theory of the case.  On a Rule 12 motion, the relevant standard is whether the FAC contains a *plausible allegation* that Section 502(a)(1)(B) is inadequate, and accordingly, relief under Section 502(a)(3) would be "appropriate."[6]

### A. The FAC Plausibly Alleges Plaintiff Cannot Obtain Relief Under § 502(a)(1)(B), Which Solely Allows Claims "Under the Terms of The Plan."

Cigna's first argument is that Plaintiff can obtain the relief he seeks under § 502(a)(1)(B). Cigna's title to the relevant section of its brief (Def. Br. I.A) reads: "Plaintiff Can Pursue His Claim for Additional Reimbursement (Count I) Through Section 502(a)(1)(B)."  Cigna argues at length that, "it is not appropriate to resort to section 502(a)(3) when another ERISA provision [Section 502(a)(1)(B)] is sufficient" (Def. Br. 6); and "the relief [Plaintiff] seeks – more money for disputed COVID-19 tests – is already available through Section 502(a)(1)(B)" (Def. Br. 7).  Cigna is

---

[6] In this context, one alternative theory is that statutorily required coverage becomes a "term of the plan," actionable under §502(a)(1)(B).  *Larson v. United Healthcare Insurance Co.*, 723 F.3 905, 912 (7th Cir. 2013) held such a claim arising out of *state law* insurance requirements could be alleged, and imputes this theory to two Supreme Court cases.  "The Supreme Court has held that when an ERISA plan includes an insurance policy, the requirements imposed by state insurance law become plan terms for purposes of a claim for benefits under § 1132(a)(1)(B).  See *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 375-76 (1999)… In effect, a plan administrator applying state insurance law requirements 'must be said to enforce plan documents, not ignore them.' *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285, 301 (2009)."  *Larson* goes on to hold that plaintiff adequately alleged claims under § 502(a)(1)(B) against United HealthCare for processing claims in violation of minimum state law standards. Whether or not Plaintiff could prevail on such a theory is not the subject of Cigna's motion.  Cigna does not seek to dismiss any claims under § 502(a)(1)(B), and Cigna certainly has not adopted the position that the terms of the CARES Act have become "the terms of the Plan."  As set forth more fully below, in the Second Circuit under *N.Y. Psychiatric Ass'n*, the appropriate structure for Plaintiff's claim seems to be § 502(a)(3).

mistaken.  The FAC plausibly alleges that Plaintiff's **§** 502(a)(1)(B) claim would not provide

adequate relief.

Any claim under ERISA § 502(a)(1)(B) must be asserted, "*under the terms of [the] plan.*"

As the Supreme Court has recognized (emphasis by the Court) (internal citations omitted):

> ERISA § 502(a)(1)(B) authorizes a plan participant to bring suit "to recover benefits due to him *under the terms of his plan*, [or] to enforce his rights *under the terms of the plan*… That statutory language speaks of enforcing the 'terms of the plan,' not of changing them.  For that reason, we have recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims.

*Heimeshof v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013).  *See also, Cigna Corp.*

*v. Amara*, 563 U.S. 421, 435-36 (2011) ("The statutory language speaks of 'enforc[ing]' the 'terms

of the plan,' not of changing them….");  *Laurent v. PriceWaterhouseCoopers LLP*, 945 F.3 739,

746 (2d Cir 2019) ("[C]ourts of appeals have construed § 502(a)(1)(B) as limited to authorizing

the enforcement of… plans as written," and collecting cases).

Here, Plaintiff would have difficulty pursuing a claim limited solely to benefits due "under

the terms of the plan."  The SPD contains no reference to full coverage for Covid tests.  FAC ¶ 15;

*see*, FAC Ex. A.  Cigna specifically took the position in its letter to Plaintiff attached to the FAC

as Exhibit C that his benefits for Covid testing were set forth in the SPD.  Cigna wrote: "The

percentage used… is listed in The Schedule," (FAC Ex. C) which appears in the SPD beginning

at page 24 (FAC Ex. A).  The schedule contains no benefits for full coverage of Covid-19 testing.

Moreover, Cigna offered false (FAC ¶¶ 22-24, 34, 82(a)) and inconsistent (*id.*, ¶¶ 32-35, 40, 82(c))

explanations for its Covid testing claims determinations.  This too suggests that Plan, "lack[s] a

written policy for reimbursement of in-person Covid-19 diagnostic testing."  FAC ¶ 85.  Plaintiff

corresponded with Cigna and specifically requested that Cigna disclose its Plan terms for covering

Covid tests (FAC ¶ 26) ("could you please provide Cigna's policies for covering out-of-network covid tests.  I do not see this issue addressed in my plan documents.")  Cigna's response is attached to the FAC as Exhibit C – and it fails to identify any Plan term for coverage of Covid tests.

Cigna's argument is that (Def. Br. 2 quoting *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)), "where Congress elsewhere provided adequate relief… there will likely be no need for further equitable relief [under ERISA § 502(a)(3)]."  Here the FAC plausibly alleges Plaintiff cannot obtain adequate relief under § 502(a)(1)(B).  Rather, Plaintiff has a viable claim for "appropriate" relief under § 502(a)(3), as argued immediately below, and Cigna's argument to dismiss such claims should be rejected.

### B.  Count I Plausibly Alleges Plaintiff Can Obtain Relief Under § 502(a)(3)

ERISA § 502(a)(3) provides:

> "A civil action may be brought—
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan"

ERISA § 502(a)(3) is the right provision for Plaintiff to invoke.  As the Supreme Court has made clear, ERISA § 502(a)(3) is a "catchall" provision which, "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  "[W]here circumstances allow, ERISA [§502(a)(3)] provides for equitable remedies that transcend the plan." *Sullivan Mestecky v. Verizon Communications Inc.*, 961 F.3d 91, 98-99 (2d Cir 2020).  Plaintiff alleges that Cigna is obligated to approve reimbursement of diagnostic Covid tests – if not under the terms of the Plan, then under the CARES Act because Cigna is a fiduciary who must obey the law.

15

It is beyond peradventure that an ERISA plan claims processor in Cigna's position is a fiduciary. *N.Y. Psychiatric Ass'n*, 798 F.3d at 131 (breach of fiduciary duty claim plausibly stated against UnitedHealth); *Larson*, 723 F.3d at 917 ("[w]hen an insurer makes eligibility and benefits determinations under an ERISA plan, it is plainly wearing it fiduciary hat…")(internal quotations omitted). Concrete factual allegations in the FAC support this. Cigna is alleged to have "discretionary authority" to determine benefits under the Plan. As set forth above, Paragraph 12 of the FAC provides (adding emphasis):

> The Plan Administrator delegates to Cigna the **discretionary authority** to interpret and apply plan terms…. Such **discretionary authority** is intended to include, but not limited to… the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments.

The FAC (¶55) alleges, "under ERISA, 'discretionary authority' is a hallmark of fiduciary status," citing to ERISA § 3(21)(A) which provides (adding emphasis):

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any **discretionary authority**… respecting management of such plan… (iii) he has any **discretionary authority** or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

The FAC proceeds to allege that Cigna breached its fiduciary duties, and that Cigna participated in transactions which violate ERISA § 502(a)(3), by failing to approve reimbursement for Covid-19 diagnostic testing. The FAC alleges (¶¶ 74-80):

> 74. Cigna's reimbursement determinations are within the scope of its fiduciary duties pursuant to Cigna ERISA Plan documents, which delegate to Cigna, "discretionary authority… include[ing] … the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments," as alleged more fully above (¶12).
>
> 75. As a fiduciary, Cigna is obligated to discharge its obligations with respect to each Cigna ERISA Plan under

a prudent standard of care, pursuant to 29 U.S.C. § 1104. Cigna must discharge its obligations:

- solely in the interests of plan participants and beneficiaries;

- for the exclusive purpose of providing benefits to participants and beneficiaries; and

- with reasonable care, skill, diligence, and prudence.

76. Cigna violated the FFCRA and the CARES Act by denying reimbursement…

…

80. By violating the FFCRA and CARES Act, Cigna failed to discharge its fiduciary duties with reasonable care, skill, diligence and prudence, and in the interests of, and for the purpose of providing benefits to, participants and beneficiaries.   A fiduciary discharging its duties in compliance with the statutory standard would allow full reimbursement for such claims.

Thus, Plaintiff brings a claim that Cigna violated its fiduciary duties when it denied full reimbursement of Covid testing claims.

Plaintiff's theory was recognized in *N.Y. Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015).  Jonathan Denbo submitted claims for psychotherapy with an out-of-network psychologist, which United denied.  Denbo alleged that the claim denial violated the Parity Act, which, broadly, requires mental health claims be treated on parity with other healthcare claims.  *See, N.Y. Psychiatric Ass'n*, 798 F.3d at 129.  Denbo asserted: (i) United violated the terms *of his plan*; and separately, (ii) United *violated the Parity Act*, and thus ERISA § 502(a)(3). "Denbo alleges that United improperly administered the CBS Plan… in violation of the Parity Act…. Denbo also claimed that United contravened the CBS Plan itself."  *Id.*, 798 F.3d, at 130. And in a similar vein, ""Denbo claimed that some of United's conduct in administering the CBS Plan violated *both the Parity Act and the terms of the plan*…" *Id.* (emphasis added).

17

United move to dismiss Denbo's §502(a)(3) claims, "on the ground that adequate relief is available under § 502(a)(1)(B)." *Id.*, 798 F.3d at 133.  Front and center was *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), including, the passage in *Varity* Cigna cites repeatedly (Def. Br. pp. 2, 5):

> As the Supreme Court explained in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), this "catchall" provision [*i.e.,* ERISA § 502(a)(3),] "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp., 516 U.S. at 512.* So "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' " *Id.* at 515.

*N.Y. Psychiatric Ass'n*, 798 F.3d at 134.  The Court rejected United's argument, reasoning (*id.*) (emphasis original):

> It is important to distinguish between a cause of action and a remedy under § 502(a)(3). "*Varity Corp.* did not eliminate a private *cause of action* for breach of fiduciary duty when another potential remedy is available." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir.2001) (emphasis added). Instead, we have instructed, if a plaintiff "succeed[s] on both claims ... the district court's remedy is limited to such equitable relief as is considered appropriate." *Id.* at 89–90 (emphasis added).

Applying that reasoning to Denbo's facts, the Second Circuit continued:

> Here, Denbo's § 502(a)(3) claims are for breach of fiduciary duty, he has not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy. In other words, it is too early to tell if his claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B). We therefore hold that the District Court prematurely dismissed Denbo's claims under § 502(a)(3) on the ground that § 502(a)(1)(B) provides Denbo with adequate relief.

Hockenstein's claims are no different.  As set forth above, it is not clear that Hockenstein can obtain a remedy under ERISA § 502(a)(1)(B).  Accordingly, Hockenstein alleges that Cigna

breached its fiduciary duties in exercising its discretionary authority to deny claims in violation of the CARES Act.  On such a theory, *N.Y. Psychiatric Ass'n* compels the Court to allow Hockenstein to plead parallel claims under both § 502(a)(1)(B) and § 502(a)(3).[7]

Cigna's many cited cases do not address the unusual situation here, where plan terms may not suffice to afford Plaintiff a remedy to which he is entitled by federal law.  The cases cited by Cigna address situations where the claimed benefit is clearly determined by the "terms under the Plan," and accordingly, actionable solely under § 502(a)(1)(B).  Moreover, one of Cigna's leading cases, *Plastic Surgery Grp., P.C. v. UnitedHealthcare Ins. Co.*, 64 F.Supp.3d 459 (EDNY 2014), relied heavily on the **district court** opinion in *N.Y. Psychiatric Ass'n*, which was soon to be reversed.  This authority should be reevaluated in light of the Second Circuit decision.

The more analogous cases, like *N.Y. Psychiatric Ass'n*, involve alleged violations of §502(a)(3) arising from a claims processor's failure to approve reimbursement in accordance with a federal statute.  Plaintiff in *Gallagher v. Empire HealthChoice Assurance, Inc*., 339 F.Supp.3d 248 (2018) similarly alleged that the relevant plan terms violated the Parity Act, and defendant, in denying coverage for mental health claims thereunder, violated ERISA § 502(a)(3).  Defendant argued that the, "Complaint does not identify Plan provisions that create a disparity between medical/surgical treatment and mental health/substance abuse treatment."  *Gallagher*, 339 F. Supp.3d at 256.  The court reasoned that Plaintiff plausibly alleged a violation of the Parity Act,

---

[7] Cigna's brief repeatedly cites *Frommert v. Conkright*, but omits the Second' Circuit's own discussion of *Frommert* in *N.Y. Psychiatric Ass'n*, which construed the holding this way (798 F.3d at 134):

> Thus in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir.2006), we vacated the district court's dismissal of the plaintiffs' § 502(a)(3) breach of fiduciary duty claim on the basis that dismissal was premature, and we affirmed the dismissal of the plaintiffs' other § 502(a)(3) claim only after holding that the defendants had violated ERISA, that most plaintiffs were therefore entitled to relief under § 502(a)(1)(B), and that the remaining plaintiffs' § 502(a)(3) claim failed on the merits.

and accordingly, a violation of ERISA § 502(a)(3).  *Id.*, 339 F. Supp.3d at 258-59.  Plaintiff's case here is conceptually analogous: Cigna's violation of minimum coverage required by another federal statute gives rise to a claim under ERISA §502(a)(3).

*Briscoe v. Health Care Service Corporation*, 281 F.Supp.3d 725, 735 (N.D. Ill. 2017) similarly recognized a theory similar to Plaintiff's here.  In *Briscoe*, plaintiffs alleged defendants failed to approve lactation counseling claims in violation of minimum coverage requirements under the Affordable Care Act.  The court sustained Plaintiff's §502(a)(3) claims (Count II in that case), reasoning the complaint plausibly alleged defendants, by violating the minimum coverage requirements in the ACA, thereby failed to meet the fiduciary standard set forth in ERISA § 404 – the section of ERISA setting out the fiduciary standard of care.  *Id.*  Notably, Briscoe did, "not specify the Plan terms that Defendants breached."  *Id.*  Here too, Plaintiff alleges Cigna breached the minimum fiduciary standards of ERISA § 404 by violating the minimum coverage requirements in another federal statute – the CARES Act.  FAC ¶¶ 75, 79-80.

### C.  Count I Section 502(a)(3) Claims Do Not Seek Money Damages

Cigna similarly misconstrues the FAC and omits *N.Y. Psychiatric Ass'n* in arguing that Plaintiff's § 502(a)(3) claims are disguised claims for money damages.  Cigna looks only to the *relief* Plaintiff seeks – reimbursement – not the substance of the claim.  Again, *N.Y. Psychiatric Ass'n* dispositively rejected this approach, holding (798 F.3d at 133):

> where, as here, a plan participant brings suit … for breach of fiduciary duty… any resulting injunction coupled with "surcharge" – "monetary 'compensation' for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment" – constitutes equitable relief under § 502(a)(3).

Plaintiff's pre-motion letter expressly quoted this passage, and the point was reiterated on the pre-motion call with the Court.  Cigna's brief is silent on the issue.

Continuing in its analysis of Denbo's claims, the Second Circuit reasoned in *N.Y. Psychiatric Ass'n*, 798 F.3d at 135:

> If Denbo seeks true equitable relief – such as losses flowing from United's breach of fiduciary duty – the relief sought would "resemble[]" the remedy of surcharge, and therefore be available to him under § 502(a)(3), ERISA's provision for equitable remedies.  If, on the other hand, the relief Denbo seeks is merely monetary compensation resembling legal damages – such as compensation that would neither redress a loss flowing from United's breach of fiduciary duty nor prevent United's unjust enrichment – the relief sought would be unavailable as an equitable remedy under § 502(a)(3).

Here, to the extent Plaintiff seeks money from Cigna under ERISA §502(a)(3), Plaintiff's "losses flow[] from [Cigna'] breach of fiduciary duty." *Id.*  Cigna is alleged, in detailed and factual allegations, to have violated its fiduciary obligations in exercising its discretionary authority. Moreover, Cigna is the insurer of the Plan liabilities (FAC ¶¶8-9), and would stand to be unjustly enriched by the wrongful denial of claims.  Accordingly, the FAC seeks a "surcharge," coupled with, "Equitable and injunctive relief… compelling Cigna to approve reimbursement of class member claims for diagnostic Covid-19 testing, and/or tender payment therefor."   (Prayer for Relief (d) and (e)).  Under *N.Y. Psychiatric Ass'n*, the relief Plaintiff seeks here is the equitable remedy of surcharge which can be obtained under § 502(a)(3), because it flows from Cigna's breach of fiduciary duties.

Plaintiff's claim is not for, "monetary compensation *resembling legal damages* – such as compensation that would *neither* redress a loss flowing from [defendant's] breach of fiduciary duty *nor* prevent [defendant's] unjust enrichment."  *N.Y. Psychiatric Ass'n, supra* (emphasis added).  A claim for benefits due "under the terms of the plan," arising under §502(a)(1)(B) would be more likely to satisfy that description.  Such a claim conceptually echoes a breach of contract claim – simply enforcing the terms of a written instrument.  *Larson*, 723 F.3d at 911 ("[a]n ERISA

21

§ 502(a)(1)(B) claim is essentially a contact remedy under the terms of the plan," and collecting appellate cases). Here, Plaintiff's alleged losses under §502(a)(3) are not due and owing under a written instrument, but rather arise from Cigna's breach of fiduciary duty.

One remedy the FAC specifically requests is reformation (Prayer for Relief (f)) – that is, an equitable remedy by which the Court steps in to modify the terms of the Plan, in this case, to bring it into compliance with the CARES Act and thus ERISA. This request for relief is certainly quite different than money damages. Under *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), and more clearly, *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2019), the Court may enter a two-step remedy: first, an equitable remedy under §502(a)(3) reforming the Plan to bring it into compliance with ERISA; second awarding benefits under §502(a)(1)(B) under the newly-reformed plan. There is no requirement to show fraud or mistake to obtain reformation; a statutory violation of ERISA suffices. *Lauren,* 945 F.3d at 747.

Cigna's argument (Def. Br. 13) that, "[a]t bare minimum, the Court should dismiss Plaintiff's § 502(a)(3) claims to the extent they seek money damages," and authority supported in support, is circular. It is uncontested that § 502(a)(3) only provides equitable remedies, not money damages. Plaintiff agrees that the FAC § 502(a)(3) claim cannot obtain "money damages." However, the claim may obtain payments that are equitable in nature.

Cigna relies (Def. Br. 16) on *LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*, but in that case, Plaintiff did not plausibly allege § 502(a)(1)(B) was inadequate for relief. The case did not pertain to a violation of a parallel federal law, and does not even cite *N.Y. Psychiatric Ass'n*. To the contrary, Plaintiff in *LI Neuroscience*, specifically sought, "an order directing defendant to pay plaintiff all benefits patient would be entitled to under the Plan." *Id.*, 361 F.

Supp. 3d, at 356.  That seems to be a quintessential § 502(a)(1)(B) claim, which – insofar as §502(a)(1)(B) is essentially a claim for contractual amounts due – is a claim for money damages.

## II.        Counts II and III Claims under ERISA § 502(a)(3) Should Not be Dismissed

Count II of the FAC alleges that Cigna sent false EOB's to Plaintiff and class members, and Count III alleges Cigna failed to undertake full and fair review of its claims denials (hereinafter, collectively "Procedural Claims").  Cigna argues that the FAC's Procedural Claims, insofar as alleged under § 502(a)(3), should be dismissed.  Again, Cigna does not seek dismissal of claims insofar as alleged under § 502(a)(1)(B).  Cigna's arguments should be rejected.  Counts II and III allege viable claims under ERISA §502(a)(3) for which Plaintiff seeks relief.

### A.  Counts II and III Are Not Duplicative of Plaintiff's Claims for Reimbursement

Cigna first argues that, in asserting Procedural Claims, "Plaintiff simply wants Cigna to pay more for the disputed claims rather than address any supposed procedural deficiencies."  Def. Br. 16.  Cigna's argument does not get off the ground.  This is not a case where Plaintiff is making a duplicative claim by alleging Cigna should have (i) reimbursed a Covid test and (ii), sent an EOB that said so too.  The alleged problem with the EOB is not the claims denial itself.  The FAC has detailed factual allegations that Cigna's EOB to Plaintiff was blatantly false.  FAC ¶¶ 22-23 allege:

> 22. According to Cigna's EOB, Cigna denied Plaintiff's claim for $250 because there was a "Discount" of $198.69.  Cigna prominently wrote (emphasis original):

| Discount | $198.69 | **You saved $198.69**.  Cigna negotiates discounts with health care professionals and facilities to help you save money. |
|---|---|---|

> 23. Cigna's EOB was false.  Plaintiff was charged by the provider, and Plaintiff in fact paid at the time services were rendered, the full $250 for the subject test, for which Plaintiff submitted the claim to Cigna.

Cigna's "full and fair review" letter to Plaintiff contradicted its own EOB for the same Covid test, by claiming the reimbursement was either the "normal" rate, or was methodologically derived – either way, eschewing the notion of a "discount." FAC ¶ 29. Though contradicting the EOB, Cigna's "full and fair review" letter also claims to be consistent with the earlier decision. It states (FAC at Ex. C p. 1): "the original decision to allow your laboratory service at the Maximum Reimbursable Charge is upheld" – but in fact, the "original decision" had nothing to do with a "Maximum Reimbursable Charge" (rather, it was that Hockenstein's test was subject to a negotiated discount). Plaintiff still does not know how to reconcile any of this (FAC ¶¶ 40-41), and the information itself would have value to him (FAC ¶ 96). Plaintiff should not have to prevail on a reimbursement claim in order to obtain truthful and accurate correspondence from Cigna explaining its coverage determination. Plaintiff's Procedural Claims are not duplicative of those seeking reimbursement, and should not be dismissed on that basis.

### B. Counts II and III Assert An Underlying Violation of ERISA

Cigna further argues the FAC fails to allege an underlying violation of ERISA, and therefore, no claim can arise, because only "the Plan" – which is legally distinct from Cigna – is obligated to provide an EOB or conduct full and fair review. Def. Br. 17-19. The Plan documents expressly incorporate ERISA obligations by reference and delegate these to Cigna. The FAC ¶ 12 alleges, quoting the SPD (adding emphasis):

> The Plan Administrator also delegates **to Cigna the discretionary authority to perform a full and fair review, as required by ERISA**, of each claim denial which has been appealed by the claimant or his duly authorized representative.

With respect to EOB's, FAC ¶¶ 20-21 allege, quoting the SPD that (adding emphasis), "**Cigna will notify you or your representative of the determination…**" Cigna's argument that only "the Plan," but not Cigna, is required to provide EOB's or conduct full and fair review contradicts the

express terms of the Plan.  Under § 502(a)(3), Plaintiff may sue for violations of ERISA or "the terms of the plan," and to obtain appropriate remedies for such violations.

Moreover, Plaintiff adequately alleges violations under *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), where the Supreme Court held defendant Smith Barney could be liable under § 502(a)(3) for its "knowing participation" in a transaction in which *its counter-party* violated ERISA § 406(a).

> Petitioners contend, and we agree, that §502(a)(3) itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued.

*Harris* Trust, 530 U.S. at 245.  The Supreme Court observed that "§502(a)(3) admits of no limit… on the universe of possible defendants."  *Id.*  Cigna participated in furnishing the false EOB's and defective full and fair review letter.  While Cigna argues (Def. Br. 18-19) that *Gates v. United Health Grp. Inc.*, 2012 WL 2953050 (S.D.N.Y. July 16, 2012) rejected such an argument, that was before the Second Circuit's *N.Y. Psychiatric Ass'n* decision, 798 F.3d at 133, which held that under *Harris Trust* a claims processor in Cigna's position could be liable for participating in the Plan's ERISA violations.

## CONCLUSION

Defendants' motion to dismiss claims under ERISA § 502(a)(3) should be denied.


Dated:  December 5, 2022
        White Plains, New York


                                    *s/ Gabriel Posner, Esq.*
                                    POSNER LAW PLLC
                                    50 Main St., Suite 1000
                                    White Plains, New York 10606
                                    Phone: 914-517-3532
                                    gabe@Posner.Law
                                    *Counsel for Plaintiff*