UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEREMY HOCKENSTEIN, for himself
and all others similarly situated,

               Plaintiff,

– against –

CIGNA HEALTH AND LIFE
INSURANCE CONPANY,

               Defendant.

**OPINION & ORDER**

22-cv-4046 (ER)

---

RAMOS, D.J.:

      Jeremy Hockenstein, a beneficiary of an employee welfare benefit plan managed by Cigna Health and Life Insurance Company ("Cigna"), brings this putative class action for monetary damages and injunctive relief against Cigna for violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Hockenstein alleges that Cigna, as a fiduciary of the plan, failed to (1) fully reimburse the cost of COVID-19 tests; (2) accurately disclose the reasons for denying full reimbursement and; (3) conduct a full and fair review of the resulting appeals. Before the Court is Cigna's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

**I.**    **BACKGROUND**

      Hockenstein is a New York resident, and Cigna is an insurance company incorporated in Connecticut. Doc. 17 ¶¶ 6–7. Hockenstein's employer, The Education Alliance, was issued an insurance policy by Cigna. *Id.* ¶ 8. The insurance policy funds the benefit plan for The Education Alliance's employees and their beneficiaries ("the Plan") under ERISA. *Id.* ¶¶ 8–9. The Education Alliance is both the "Plan" and the

"Plan Administrator."[1]  Doc. 17-1 at 98, Summary Plan Description (the "SPD"). Hockenstein and two of his dependents were beneficiaries in the Plan.  *Id.* ¶¶ 10, 32.

Cigna acts as a fiduciary[2] under the Plan and processes all claims for healthcare benefits, including making all claim determinations under the Plan.  *Id.* ¶ 11.  The SPD for the Plan issued by Cigna states that "the Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms."  *Id.* ¶ 12.  The SPD, however, does not include any benefits specifically related to COVID-19 testing.  Doc. 17 ¶ 15; *see also* SPD, Doc. 17-1.

In early 2020, the global COVID-19 pandemic broke out.  To contain the spread of the virus and provide economic benefits, the Government passed the Families First Coronavirus Response Act (the "FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").  *Id.* ¶ 14.  Under the FFCRA and the CARES Act, an insurer is obligated to reimburse the costs paid by a beneficiary for COVID-19 testing in full without imposing any cost-sharing on the beneficiary (the "Statutory Requirement").[3]  *Id.*  Thus, pursuant to the two statutes, Cigna is obligated to fully

---

[1] "The term 'plan administrator' or 'administrator' means the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C.A. § 1002(16).

[2] Cigna does not dispute that it is a fiduciary under the Plan.  *See* Cigna's Memo for Motion to Dismiss, Doc. 25 at 13 (acknowledging Hockenstein's allegations that Cigna breached its fiduciary duties and not disputing that it is in fact a fiduciary).

[3] The FFCRA provides in relevant part:

> (a) In General.—A group health plan and a health insurance issuer offering group or individual health insurance coverage … shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the emergency …
>
> > (1) In vitro diagnostic products … or the diagnosis of the virus that causes COVID-19 that are approved, cleared, or authorized under section 510(k), 513, 515 or 564 of the Federal Food, Drug, and Cosmetic Act, and the administration of such in vitro diagnostic products.

FFCRA § 6001(a)(1), Pub. L. 116-127 (emphasis added).

The CARES Act provides in relevant part:

reimburse the cost of COVID-19 testing, even though it is not covered by the Plan. Doc. 17 ¶ 14; *see also* FFCRA § 6001(a)(1), Pub. L. 116–127 and CARES § 3202(a), Pub. L. 116-134.

Hockenstein and his two dependents obtained four COVID-19 tests on three separate days at the Rapid Test Center ("RTC"), a diagnostic testing provider. Doc. 17 ¶¶ 16, 32. Hockenstein and his two dependents were tested at RTC on different days in September 2021. *Id.* ¶ 32. Hockenstein paid the full $250 amount for each of the three tests in September because RTC was an out-of-network provider under the Plan, *id.* ¶¶ 16, 18, 32, and submitted claims for reimbursement to Cigna. In the three explanation of benefits ("EOBs") [4] issued by Cigna in response to the requests for reimbursement, it denied each for different reasons as set forth below.

| Beneficiary | Test Date | Plaintiff Paid | Cigna Covered | Explanation Provided by Cigna in EOB |
|---|---|---|---|---|
| Dependent 1 | 9/6/2021 | $250 | $153.93 | Patient Responsibility $96.07 |
| Plaintiff | 9/27/2021 | $250 | $76.97 | Patient Responsibility $173.03 |
| Dependent 2 | 9/27/2021 | $250 | $153.93 | Patient Responsibility $0; Cigna negotiated discount of $96.07 |

*Id.* ¶ 32.

As the foregoing makes clear, Cigna provided a different rate of reimbursement for one of the tests, and different explanations for each of the three tests.

---

(a) Reimbursement Rate.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the [FFCRA] with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:

(1) If the health plan or issuer has a negotiated rate with such … such negotiated rate shall apply throughout the period of such declaration.

(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

CARES § 3202(a), Pub. L. 116-134.

[4] An EOB is a document that states the standard used in a denial and refers to the specific plan provisions on which the determination was based. *Id.* ¶¶ 20–21.

On January 16, 2022, Hockenstein was tested again at RTC, and again paid the full amount for the test—$250. *Id.* ¶ 16. Hockenstein submitted a claim for reimbursement of the January 16 test to Cigna but Cigna only reimbursed him $51.31, denying the $198.69 balance. *Id.* ¶ 19. In the EOB issued thereafter, Cigna stated "You saved $198.69. Cigna negotiates discounts with [RTC] to help you save money." *Id.* ¶ 22. However, RTC did not participate in any insurance programs and so could not have "negotiated discounts" with Cigna. *Id.* ¶ 24. Moreover, this fourth EOB provides a different rate of reimbursement and different explanation than the previous three EOBs.

On February 4, 2022, Hockenstein appealed the denial of the January 16 test, arguing that there could be no "negotiated price" because RTC did not participate in any insurance, and that the CARES Act requires Cigna to reimburse the full cost of COVID-19 testing. *Id.* ¶ 26. On March 3, 2022, Cigna denied Hockenstein's appeal via letter. Doc. 17-3. Contrary to what Cigna stated in the EOB—that the claim was denied because of the discounted rate— in the March 3 letter, Cigna indicated that it denied the appeal because the uncovered portion exceeded the Maximum Reimbursable Charge ("MRC").[5] *Id.* at 3; *see also* Doc. 17 ¶ 28.

Hockenstein also submitted letters to Cigna to contest its reimbursement denials for the three September COVID-19 tests. *Id.* ¶ 37. Cigna, however, denied all three appeals, again relying on the MRC and using almost the same language as in the March 3 letter. *Id.* ¶ 39.

---

[5] Cigna claimed in the EOB that maximum amount they reimbursed is the MRC, which is determined by either the "provider's normal charge" or a methodology similar to Medicare. *Id.* ¶ 29.

4

Hockenstein brings three counts, each alleging a violation of both ERISA § 502(a)(1)(B) [6] and § 502(a)(3).[7] In Count I, Hockenstein alleges that Cigna failed to fully reimburse the tests, in violation of the Statutory Requirement, its fiduciary duty, and its discretionary authority under the Plan.[8] *Id*. ¶¶ 74–75. In Count II, Hockenstein alleges that Cigna provided insufficient and fraudulent notice in the EOBs, in violation of ERISA § 503(1),[9] its fiduciary duty, and its discretionary authority under the Plan. *Id*. ¶ 98. In Count III, Hockenstein alleges that Cigna failed to conduct a full and fair review, in violation of ERISA § 503(2),[10] its fiduciary duty, and its discretionary authority under the Plan. *Id*. ¶ 108. For each Count, Hockenstein seeks monetary damages under § 502(a)(1)(B) and injunctive relief under § 502(a)(3). Doc. 17 at 25.

---

[6] Section 502(a)(1)(B) provides that:

> A civil action may be brought—by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C.A. § 1132(a)(1)(b).

[7] Section 502(a)(3) provides that:

> A civil action may be brought—by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan;

29 U.S.C.A. § 1132(a)(3).

[8] The SPD provides that in relevant sections:

> The Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms.... Such discretionary authority is intended to include, but not limited to… the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

SPD, Doc. 17-1 at 99.

[9] Section 503(1) requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant[.]" 29 U.S.C.A. § 1133(1).

[10] Section 503(2) requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C.A. § 1133(2).

Hockenstein filed this putative class action on May 17, 2022. Doc. 1. He filed a first amended complaint ("FAC") on August 12, 2022. Doc. 17. On November 14, 2022, Cigna filed a partial motion to dismiss: Cigna does not move to dismiss the claims brought under § 502(a)(1)(B); it only moves to dismiss all claims brought under § 502(a)(3). Doc. 24; Doc. 25 at 7–8.

## II.   LEGAL STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it."

*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III.   DISCUSSION

ERISA provides two avenues for plaintiffs to seek relief—§ 502(a)(1)(B) and § 502(a)(3).  29 U.S.C.A. § 1132.  Section 502(a)(1)(B) allows "a participant or beneficiary to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of his plan*, or to clarify his rights to future benefits *under the terms of the plan*[.]" § 502(a)(1)(B) (emphasis added).  Section 502(a)(3) allows "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other *appropriate equitable relief* …"  § 502(a)(3) (emphasis added).

### A.  Count I:  Failure to Fully Reimbursement the Costs of COVID Tests

Hockenstein seeks full reimbursement for his COVID-19 tests under § 502(a)(3). Doc. 17 ¶ 73.  Cigna moves to dismiss on two grounds:  (1) that § 502(a)(3) is an inappropriate avenue for relief when relief is available under § 502(a)(1)(B); and (2) that money damages are not available under § 502(a)(3).  Doc. 25 at 8.

  1. *Section 502(a)(3) is an Appropriate Avenue of Relief on the Facts of this Case because §502(a)(1)(B) does Not Provide Adequate Relief*

Cigna argues that Hockenstein's § 502(a)(3) claim under Count I—seeking full reimbursement for the COVID-19 tests—is inappropriate because the same relief is available under § 502(a)(1)(B).  *See Varity Corp. v. Howe*, 516 U.S. 489, 490 (1996).  In *Varity*, the Supreme Court held that equitable relief is normally not appropriate when Congress elsewhere provides adequate relief for a beneficiary's injury.

In response, Hockenstein argues that § 502(a)(1)(B) does not provide a remedy, as it solely allows "claims under the terms of the plan."  Doc. 26 at 17.  This is because the Plan as written does not impose an obligation to fully reimburse costs related to COVID-19 testing.  Doc. 17 ¶¶ 15, 85; *see also* Summary Plan Description, Doc. 17-1.  Rather, it

7

is the Statutory Requirement—the FFCRA and the CARES Act—that creates this obligation.  Doc. 17 ¶ 14.  Hockenstein thus argues that by denying full reimbursement, Cigna violated the two Acts, but not the terms of the Plan.  Doc. 26 at 17–19.  Consequently, he argues that § 502(a)(1)(B), which only authorizes benefit recovery *under the terms of the plan*, does not provide an adequate remedy, and accordingly the claim is appropriately brought under § 502(a)(3).  *Id.*  While the Court agrees that equitable relief is normally not appropriate when adequate relief can be obtained elsewhere, in the instant case, no remedy is available under the terms of the Plan pursuant to § 502(a)(1)(B), making Hockenstein's claim under § 502(a)(3) proper.

Cigna further argues that § 502(a)(1)(B) allows courts to issue orders not only to recover benefits due under the terms of the plan, but also to clarify rights to future benefits under the terms of the plan.  Doc. 25 at 18.  Cigna argues that the equitable relief Hockenstein seeks, including reprocessing the disputed COVID-19 test claims and compelling payment of additional reimbursement, is available through a clarification of rights to future benefits under § 502(a)(1)(B).  *Id.*  However, this argument requires this Court to read the Statutory Requirement into the Plan.

The Supreme Court has held that an ERISA plan cannot be changed to incorporate anything that is not originally included.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36 (2011) ("The statutory language speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them…"); *see also Heimeshof v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (recognizing that "§ 502(a)(1)(B) authorizes a plan participant to bring suit … *under the terms of the plan*, [or] enforce his rights *under the terms of the plan*.") (emphasis in original).  The Second Circuit has similarly held that "courts of appeals have construed § 502(a)(1)(B) as limited to authorizing the enforcement of … plans as written." *Laurent v. PriceWaterhouseCoopers LLP*, 945 F.3 739, 746 (2d Cir. 2019).  Because the Statutory Requirement is not part of, and cannot be read into the Plan, there is no coverage for COVID-19 testing under the Plan.  Thus, Hockenstein sufficiently alleges that there is no

8

actionable reimbursement claim under § 502(a)(1)(B).  Accordingly, the § 502(a)(3) claim under Count I is appropriate because § 502(a)(1)(B) does not provide a basis to pursue the relief sought.

   2. *Money Damages for Breach of Fiduciary Duties Are Available Under ERISA §502(a)(3)*

Cigna's second argument is that reimbursement is a form of monetary damages, which is not authorized under this subsection.  Doc. 25 at 15.  It further argues that the equitable relief Hockenstein seeks, "equitable and injunctive relief sufficient to remedy [Cigna's] unlawful conduct," "reformation," and "further equitable relief against Cigna including surcharge," are in fact monetary damages because, in essence, they are requests for additional reimbursement.  *Id*; *see also Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 205 (2002) ("An injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity.").

Hockenstein argues that under § 502(a)(3), the relief he seeks is the "losses flowing from [defendant's] breach of fiduciary duty," which is recognized as proper *equitable* relief.  *See New York State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 135 (2d Cir. 2015).  In other words, Hockenstein argues that his claim is not for monetary damages that resemble legal remedies, but for equitable remedies that flow from a breach of fiduciary duty.  *See id.* at 135 (noting that monetary compensation resembling legal damages—such as compensation that would neither redress a loss flowing from [defendant's] breach of fiduciary duty nor prevent [defendant's] unjust enrichment—is not actionable under § 502(a)(3)).

The Second Circuit has held that reformation and other injunctions prohibiting future violations "closely resemble[]" the traditional equitable remedies of injunctive relief and surcharge.  *See id.*  Consequently, reformation of the insurance policy and injunctions that prohibit future violations are actionable under § 502(a)(3).  Thus, the

9

question left is whether the injunctive relief Hockenstein seeks—compelling monetary reimbursement—is actionable under § 502(a)(3), which only allows equitable remedies.

Section 502(a)(3) imposes a fiduciary duty to comply with ERISA. *See id.* at 131; *see also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1291 (11th Cir. 2005) (stating that when an insurer makes eligibility and benefits determinations under an ERISA plan, "it is plainly wearing its fiduciary hat, and the beneficiary may challenge the correctness of the decision according to the terms of the ERISA plan."). The Second Circuit has held that injunctions compelling monetary damages for breach of fiduciary duty under ERISA are equitable relief. *See New York State Psychiatric Ass'n, Inc.*, 798 F.3d 125 at 134 ("[F]or breach of fiduciary duty relating to the terms of a plan, any resulting injunction *coupled with surcharge*—monetary compensation for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment—constitutes equitable relief under [ERISA] § 502(a)(3).") (emphasis added) (internal quotations omitted) *compare with Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 103 (2d Cir. 2005), (affirming a dismissal of the plaintiff's § 502(a)(3) claims because it was clear that "any harm to [the plaintiff could] be compensated by money damages" *entirely* and she "[could not] satisfy the conditions required for injunctive relief."). In the instant case, monetary damages would not completely satisfy the required injunctive relief.

As a fiduciary, Cigna must discharge its obligations solely in the interests of plan participants and beneficiaries, for the exclusive purpose of providing benefits to them, and with reasonable care, skill, diligence, and prudence. Doc. 17 ¶ 75; *see also* 29 U.S.C. §1104. Hockenstein sufficiently alleges that Cigna breached its fiduciary duty by denying him the benefits that are guaranteed by the Statutory Requirement. *Id.* ¶¶ 76–79. Cigna's determination of reimbursements for healthcare coverage including COVID-19 tests is within the scope of Cigna's discretionary authority. *Id.* ¶ 74. Because Hockenstein sufficiently alleges a breach of fiduciary duty, the equitable relief that Hockenstein seeks—compelling money payment—is actionable under § 502(a)(3).

Therefore, the § 502(a)(3) claims are appropriate.  Accordingly, the dismissal of the injunctive relief Hockenstein seeks under § 502(a)(3) at this stage of the litigation is premature.  *See New York State Psychiatric Ass'n, Inc.*, 798 F.3d 125 at 134 (holding that injunctive relief, coupled with traditional equitable remedy, for any loss resulting from breach of fiduciary duty is permissible under ERISA § 502(a)(3)); *see also id.* at 135 (noting that it is also too early to tell if plaintiff's ERISA § 502(a)(3) claims are in effect repackaged claims under ERISA § 502(a)(1)(B)).

Because remedies are not available under § 502(a)(1)(B) and the relief that Hockenstein seeks is appropriate equitable relief, Cigna's motion to dismiss the § 502(a)(3) claim from Count I is DENIED.

### B. Counts II and III:  Insufficient Notice and Failure to Conduct a Full and Fair Review

In Count II, Hockenstein challenges the adequacy of the EOBs that Cigna provided for the COVID-19 testing claims.  Doc. 17 ¶¶ 95–97.  In Count III, Hockenstein argues that Cigna failed to conduct a full and fair review of the appeal of the denials.  *Id.* ¶¶ 106, 108.  He seeks (1) accurate and adequate notices that disclose the basis for denying benefits and (2) a full and fair review of the appeals, all in a manner compliant with ERISA.  *Id.* ¶¶ 96, 106.

Cigna raises identical arguments in support of its motion to dismiss the § 502(a)(3) claims from Counts II and III:  (1) the counts contain duplicative requests for full reimbursement; and (2) there is no underlying violation of § 503.

To state a plausible § 502(a)(3) claim based on an underlying § 503 violation, a plaintiff must clear two hurdles:  (1) establish that the §502(a)(3) claim is "appropriate" under *Varity* and that it seeks proper equitable relief rather than impermissible money damages; and (2) establish an underlying ERISA violation.  *See Miller v. Int'l Paper Co.*, No. 12 Civ. 7071 (LAK) (JLC), 2013 WL 3833038, at *4 (S.D.N.Y. July 24, 2013) ("While ERISA § 502(a)(3) provides a vehicle for seeking equitable relief, in order to

bring a claim pursuant to this Section, a plaintiff must also allege an underlying violation of some substantive provisions of ERISA.").

First, in assessing whether the relief sought under § 503 is appropriate, courts look to whether the remedy sought by plaintiff is to "remand for further administrative review." *See Levi v. RSM McGladrey, Inc.*, No. 12 Civ. 8787 (ER), 2014 WL 4809942, at *10 n.24 (S.D.N.Y. Sept. 24, 2014). The typical equitable remedy for § 503 violations under § 502(a)(3) should be "remand to the *plan [administrator]*" for review. *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) (citing *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993)) (emphasis added).

Here, Hockenstein seeks reprocessing of the adverse benefit denials that compels Cigna, which is not the Plan Administrator, to reimburse Plaintiff. The Plan Administrator here is the employer, The Educational Alliance. Doc. 17-1 at 98 ("the name … of the Plan Administrator is: [The Educational Alliance]"). Because the relief that Hockenstein seeks is not a "remand to the plan administrator," the Court holds that the equitable relief Hockenstein seeks is not appropriate for the underlying § 503 violation.

The second argument Cigna raises is that Hockenstein does not allege any underlying violation under § 503. Cigna argues that Hockenstein cannot show an underlying violation of § 503 because Cigna is not the "employee benefit *plan*," and only the Plan can be sued under the statute. Doc. 25 at 22. Courts in this District have held that "[§] 503 explicitly imposes obligations only upon 'employee benefit plan[s].'" *See Gates v. United Health Grp. Inc.*, No. 11 Civ. 3487 (KBF), 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012). Even though only the plan can be held liable, at least one court has found a plan administrator liable under § 503. *See Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2001 WL 863561, at *7 (S.D.N.Y. July 31, 2001) (recognizing courts are split as to whether administrators can be held liable under § 503). Nonetheless, this Court need not decide whether a plan administrator can be held

liable under § 503 because Cigna is neither the Plan nor the Plan Administrator. *See id.* (refusing to address the issue as to whether a plan administrator can be held liable because the defendant is neither the plan nor the plan administrator).

The SPD specifies that the Plan is "The Educational Alliance." Doc. 17-1 at 98 ("The name of the Plan is: The Educational Alliance"). Similarly, the Plan Administrator is the employer—The Educational Alliance—not Cigna. *Id.* Because the FAC cannot plausibly allege that Cigna is the Plan or the Plan Administrator, there can be no underlying violation of § 503 against Cigna. *See Gates*, 2012 WL 2953050, at *11; *see also Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 472 (E.D.N.Y. 2014) (dismissing § 503 claims when the plaintiff did not allege that any defendant is the plan); *Am. Med. Ass'n*, 2001 WL 863561, at *7 (dismissing the § 503 claims as the plaintiff did not allege that the defendant is either the plan or the plan administrator).

Hockenstein argues that even if Cigna is not the Plan, Counts II and III are actionable under § 503(a)(3) because the Supreme Court noted that "[Section] 502(a)(3) admits of no limit … on the universe of possible defendants." *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000). Hockenstein's reading, however, misinterprets the case. This District has clarified that under § 502(a)(3), a plaintiff is not relieved of his duty to establish an underlying violation of the statute even when he is entitled to pursue equitable relief against a defendant for violations of ERISA. *See Gates*, 2012 WL 2953050, at *11 ("[B]ecause [§ 503] only imposes obligations on 'plan[s]' . . . plaintiff cannot establish an underlying § 503 violation . . . for purposes of [§] 502(a)(3) liability."); *see also Metro. Life Ins. Co. v. Sicoli & Massaro Inc.*, No. 15 Civ. 7141 (PGG), 2016 WL 5390899, at *8 (S.D.N.Y. Sept. 26, 2016) (underscoring that § 503(a)(3) claims seeking equitable relief must be based on an underlying ERISA violation). Accordingly, because Hockenstein cannot allege that Cigna is the Plan or Plan

Administrator, there is no underlying § 503 violation and the § 502(a)(3) claims under Counts II and III are dismissed.

IV.   **LEAVE TO AMEND**

Courts are instructed to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Trundle & Co. Pension Plan v. Emanuel*, No. 18 Civ. 7290 (ER), 2020 WL 5913285, at *3 (S.D.N.Y. Oct. 6, 2020) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (citation omitted)).

Here, because Hockenstein cannot plausibly allege that Cigna is the Plan or the Plan Administrator, an amended complaint would be futile. Thus, leave to amend is denied.

V.   **CONCLUSION**

For the foregoing reasons, Cigna's motion to dismiss the § 502(a)(3) claim in Count I for failure to state a claim is DENIED. Cigna's motion to dismiss the § 502(a)(3) claims in Counts II and III for failure to state a claim is GRANTED. The parties are directed to appear for a telephonic conference scheduled for October 26, 2023 at 2:30 p.m. The parties are directed to dial 877-411-9748 and enter access code 3029857# when prompted. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated:   September 19, 2023
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.