## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY HOCKENSTEIN, for himself and all others similarly situated, | Civil Case No. 1:22-cv-04046-ER |
| Plaintiff, | |
| v. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

**Table of Contents**

I.     OVERVIEW ............................................................................................................. 1

II.    PROCEDURAL BACKGROUND....................................................................... 3

III.   SUMMARY OF THE CASE................................................................................ 4

     A.   Plaintiff's Allegations................................................................................... 4

     B.   Cigna's Position ............................................................................................ 5

     C.   The Claims Data............................................................................................ 5

IV.   THE SETTLEMENT AGREEMENT ................................................................ 6

V.    AFTER IMPLEMENTATION OF THE NOTICE PLAN, INCLUDING
     INDIVIDUAL NOTICE TO CLASS MEMBERS, THERE HAVE BEEN
     NO OBJECTIONS OR OPT OUTS ................................................................. 9

VI.   THE COURT SHOULD ENTER THE FINAL APPROVAL ORDER............................ 11

     A.   The Settlement Class should Receive Final Certification ............................ 11

     B.   The Settlement Agreement should Receive Final Approval ........................ 14

          1.   Rule 23(e)(2) Factors: The Settlement is "Fair, Reasonable, and Adequate" ........ 15

          2.   *Grinnell* Factors. ................................................................................ 19

     C.   The Requested Attorney Fee and Service Award should be Approved ........................ 20

     D.   Administration Fees Payable to Angeion should be Approved ................................. 21

     E.   Health Leads, Inc. should be Approved as *Cy Pres* Recipient..................................... 22

VII.  CONCLUSION................................................................................................. 22

## Table of Authorities

**Cases**

*In re Actos Antitrust Litigation*, 13-CV-9244 (RA),
2024 WL 4345568 (S.D.N.Y. Sep. 30, 2024) ............................................................... 11

*Alvarez v. Schnipper Restaurants LLC*, No. 16 CIV. 5779 (ER),
2019 WL 5682633 (S.D.N.Y. Nov. 1, 2019) ............................................................... 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 13

*Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022) ........................................................ 12

*Consol. Rail Corp. v. Town of Hyde Park* 47 F.3d 473 (2d Cir. 1995) ........................... 12

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91 (2d Cir. 2007) ................. 15

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .......................................... 15

*Diamond v. Local 807 Labor Management Pension Fund*, 595 Fed. Appx. 22 (2d Cir. 2014) ... 17

*Espinoza v. 953 Associates LLC*, 280 F.R.D. 113  (S.D.N.Y. 2011) ............................... 11

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*, 2021 WL 3667979 (S.D.N.Y Aug. 17, 2021) ......... 12

*In re GSE Bonds Antitrust Litig.,* 414 F.Supp.3d 686 (S.D.N.Y. 2019) ..................... 12, 15-17, 19

*Goidel v. Aetna Life Ins. Co.*, 21-CV-7619 (VSB),
2024 WL 4441806 (S.D.N.Y. Oct. 8, 2024) ........................................... 14, 15, 18, 19

*In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 10

*Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128 (2d Cir. 2015) ................................... 12

*Lea v. Tal Educ. Grp.*, No. 18-cv-5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .............. 18

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 10

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................... 11, 12

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998) ................................... 13

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ............................. 14

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................. 10, 19

*Nechis v. Oxford Health Plans, Inc.* 421 F.3d 96, 102 (2d Cir. 2005) ......................................... 17

*Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147 (2d Cir. 2001)............................... 12

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) ........................... 12

*Solis v. OrthoNet LLC*, 19-cv-4678(VSB), 2021 WL 1904984 (S.D.N.Y. May 11, 2021).......... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................... 15

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................... 14

*Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693,
2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)......................................................................... 15

## Statutes and Rules

Coronavirus Aid, Relief, and Economic Security Act Pub. L. 116-134 (the, "CARES Act") ....... 4

Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. §§ 1001 *et seq.*................................................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

Plaintiff Jeremy Hockenstein, for himself and the class conditionally certified in this case, respectfully submits this memorandum of law in support final approval of the Parties' class action Settlement Agreement, as set forth in the accompanying **proposed order** submitted herewith.[1]

## I.    OVERVIEW

On January 31, 2025, the Court provisionally certified a settlement class and granted preliminary approval of the class-wide Settlement Agreement between Plaintiff and Defendant Cigna Health and Life Insurance Company ("Cigna"). *See*, ECF-40. Pursuant to the Court's preliminary approval order, individual notice of the Settlement Agreement was sent to the address of record *via* U.S. Mail to **21,610** settlement class members. **No** class members have objected to the settlement, and **no** class members have opted out. The deadline for class members to opt-out or object to the settlement expired April 29, 2025. In accordance with the Settlement Agreement, Cigna has established a settlement fund of $2,908,683.

The Court should enter the accompanying proposed order, which will grant final approval of the Settlement Agreement and certification of the settlement class; order the Settlement Administrator, Angeion Group, LLC ("Angeion"), to distribute settlement funds to class members pursuant to the Plan of Allocation set forth in the Settlement Agreement; award attorney fees to class counsel of $600,000 from the settlement fund, and an individual service award to named Plaintiff of $10,000 from Cigna, in accordance with the motion previously filed and briefed at ECF 43-44; award fees to Angeion for its role as settlement administrator up to $101,684 from the settlement fund; approve Health Leads Inc., P.O. Box 961630, Boston, MA 02196 as *cy pres* recipient for funds for any expired uncashed settlement checks which may remain in the settlement fund; and enter final judgement disposing of this action.

---

[1] The Settlement Agreement (or "SA") has been filed with the Court at ECF 38-2. References to "Prop. Order" mean the proposed final approval order submitted herewith.

The merits of the Settlement Agreement are set forth in detail in the motion for preliminary approval at ECF 38-39, and are reviewed again below.  Pursuant to the Settlement Agreement, Cigna has established a settlement fund of **85%** of the difference between its reimbursement amounts for relevant Covid-19 tests, and amounts billed by the providers for such tests up to $500 per test.  Subject to final approval, class members will receive a *pro rata* share of the settlement fund for such amounts, after any deductions from the settlement fund to pay settlement administrator costs and attorney fees.  *See*, Prop. Order ¶¶ 12-13.  Generally, class members were **not** required to submit documentation to receive payment.  Checks will simply arrive in the mail, or class members who elected to be paid electronically will receive electronic payment.  For Covid-19 tests billed above $500, *pro rata* payout will also be available to the extent the class members submitted a claim form and reasonable proof of payment, as set forth in the instructions in the class notice and the Court's preliminary approval order.  The release of claims in the Settlement Agreement is limited in scope, pertaining solely to reimbursement for Covid-19 testing claims.

After providing detailed and extensive notice of the settlement to class members, there have been **no objections or opt-outs**.  Individual notice of the settlement was sent out to more than 21,000 class members.  The settlement was further publicized on the settlement website (the URL for which was prominently included in each individual notice), where class members could find detailed information and key documents including the pleadings, Settlement Agreement, and motion for attorney fees.  Angeion reports the settlement website had more than 7,500 unique visitors.  That no class members have objected or opted out is a strong vote of confidence in favor of approval of the settlement.

The accompanying proposed order would further grant class counsel attorney fees of $600,000 from the settlement fund and a service award to named Plaintiff of $10,000 payable by

Cigna.  Prop. Order ¶¶ 11, 15.  For these items, Plaintiff relies on the motion and briefing previously filed with the Court at ECF 43-44.  Additionally, the proposed order would grant settlement administration fees to Angeion up to $101,684, payable out of the settlement fund.  Prop. Order ¶ 11(b).  This amount reflects Angeion's estimate for its fee in this matter (as its administration work is ongoing at this time).  Finally, the proposed order will designate a *cy pres* recipient for monies remaining in the settlement fund as a result of any class members not cashing their settlement checks.  In accordance with the Settlement Agreement, the parties respectfully propose Health Leads, Inc. of Boston, Massachusetts, a nonprofit dedicated to promoting greater public access to healthcare, including vaccination.  SA § 7.7(a); Prop. Order ¶ 17.

Accordingly, and as set forth more fully below, Plaintiff respectfully moves the Court to enter the accompanying Proposed Order granting final approval of the class action Settlement Agreement in this matter.

## II.    PROCEDURAL BACKGROUND

Plaintiff initiated this action filing a complaint on May 17, 2022.  See, ECF 1.  Cigna filed a pre-motion letter seeking dismissal of all claims alleged under ERISA § 502(a)(3) pursuant to Fed. R. Civ. P. 12(b)(6).  *See*, ECF 13.  Plaintiff amended the complaint filing a first amended complaint ("FAC") on August 12, 2022, which remains the operative pleading.  ECF 17.  On September 12, 2022, Cigna again filed a pre-motion letter seeking dismissal of all claims alleged under ERISA §502(a)(3) pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 18.  Plaintiff filed a response letter on September 14, 2022, asserting Plaintiff intended to oppose Cigna's motion.  ECF 19.  On October 21, 2022, the Court held a pre-motion conference. (*See*, ECF minute entry 10/21/22, ECF 27.)  Cigna thereafter moved to dismiss all claims alleged under ERISA §502(a)(3), and Plaintiff opposed.  ECF 24, 25, 26, 29.

On September 19, 2023, the Court granted in part and denied in part Cigna's motion to dismiss. ECF 31. Specifically, the Court dismissed Counts II and III of the FAC insofar as alleging claims under ERISA § 502(a)(3), but the Court denied Cigna's motion to dismiss Count I of the FAC. On October 3, 2023, Cigna filed an answer and affirmative defenses, *inter alia*, denying all liability, and denying that any class could be certified in this action. ECF 32. On November 8, 2023, the Court entered a case management order governing discovery and other pre-trial matters. ECF 37. The parties thereafter began the discovery process, but soon entered into settlement discussions. An agreement in principle to settle was executed July 10, 2024, and the Parties thereafter negotiated the terms of the Settlement Agreement, which was executed January 15, 2025 and filed with the Court at ECF 38-2. On January 31, 2025, the Court granted preliminary approval of the Settlement agreement and ordered the parties to implement the notice plan set forth therein. ECF 40.

## III.    SUMMARY OF THE CASE

### A.    *Plaintiff's Allegations*

Plaintiff's operative pleading is the FAC at ECF 17. The FAC alleges Plaintiff was covered by a healthcare benefits plan governed by ERISA, for which the FAC alleges Cigna made all benefits determinations. FAC ¶¶ 8-11. Plaintiff alleges he obtained diagnostic Covid-19 tests for himself and his dependents which should have been covered in full at the provider's billed amounts by Plaintiff's healthcare plan, pursuant to the Coronavirus Aid, Relief, and Economic Security Act Pub. L. 116-134 (the, "CARES Act"). *Id.* ¶¶ 14, 16, 32. Plaintiff allegedly paid the provider in full for the Covid-19 tests, and submitted claims to Cigna for coverage. Cigna allegedly covered the Covid-19 tests in part, but not in full. *Id.*, ¶¶ 16-19, 32. The FAC alleges Plaintiff submitted appeals to Cigna, requesting full coverage for the Covid-19 tests, but Cigna denied Plaintiff's appeals. *Id.* ¶¶ 26-28, 37-38.

The FAC alleges in Count I that Cigna violated its fiduciary obligations under ERISA by failing to reimburse Plaintiff's and class members' Covid-19 tests in full.  FAC ¶¶ 71-89.  Count I is brought by a putative nationwide class and a putative sub-class of individuals limited to those who obtained services from the same provider as named Plaintiff (Rapid Test Center in New York, New York).  FAC ¶¶ 46-48.  The FAC contains additional Counts II and III, but these were dismissed by the Court, at least insofar as arising under ERISA § 502(a)(3).  *See*, ECF 31.

### B.    *Cigna's Position*

Cigna's position is set forth in its motion to dismiss under Fed. R. Civ. P. 12(b)(6) (*see*, ECF 24, 25), and in its answer and affirmative defenses denying the merit of Plaintiff's claims. *See*, ECF 32 ("Answer").  Cigna asserts it complied at all times with its obligations under ERISA and other applicable federal laws, and all of its obligations under relevant ERISA governed healthcare plans.  *See generally*, Answer ¶¶ 1, 54, 56-57, 88-89, 98, 108; Affirmative Defense 6, 12.  Cigna further asserts this case cannot be maintained as a class action for numerous reasons, including the claims raise individual issues among members of the putative classes, there is a lack of commonality or typicality among claims, class treatment would be unmanageable, and named plaintiff and counsel are not adequate.  Answer ¶¶ 44-45, 47-51, 53; Affirmative Defense 4, 5.

### C.    *The Claims Data*

In connection with the negotiation of the Settlement Agreement, Cigna produced an extract of claims data for reimbursement of Covid-19 tests submitted by putative class members.  *See,* Karen Swartz Aff. ¶¶ 3-5 at ECF 38-4.  Cigna's claims data includes sufficient information, for purposes of settlement, to identify members of the settlement class and to compute their *pro rata* share of the settlement fund.  The claims data produced by Cigna reflects:

(i)     Participants and beneficiaries in Cigna ERISA plans submitted approximately 28,000 claims to Cigna for reimbursement of expenses incurred for Covid-19 tests with out-of-network providers during the relevant timeframe;

(ii)    The aggregate difference between total amounts billed by providers for such Covid-19 tests, and Cigna's reimbursement for all such tests, is approximately $3.89 million;

(iii)   The aggregate difference between total amounts billed by providers for such Covid-19 tests *up to $500*, and Cigna's reimbursement for all such tests, is $3,421,980.

Cigna maintains this information in the ordinary course of its business as a healthcare insurer and provider of claims determinations and other healthcare delivery solutions. *See*, *id.*, ¶¶ 1, 3-5.

## IV.    THE SETTLEMENT AGREEMENT

Following is a summary of salient terms in the Settlement Agreement (*see generally*, ECF 38-2):

**Payment by Cigna**.  Cigna has paid **$2,908,683.00** into a settlement fund.  SA §§ 1.27; 2.3. Cigna's payment is **85%** of the difference between (a) Cigna's reimbursements and (b) amounts billed by providers *up to $500* for relevant Covid-19 tests (*i.e.*, 0.85 *times* $3,421,980).  Cigna's payment is approximately **75%** of the difference between (a) Cigna's reimbursements and (b) amounts billed by providers *in total (i.e., with no $500 cap)* for relevant Covid-19 tests (*i.e.*, 0.75 *times* $3.89 million).  Distribution of the settlement funds to class members will be subject to *pro rata* reductions for any Court approved settlement administration costs and attorney fees.  SA §§ 7.1(g)-(h); *id*. § 7.2; Prop. Order ¶¶ 11-12.

**Certification of Settlement Class**.  Section 1.28 of the Settlement Agreement defines the settlement class as follows:

> "Settlement Class" means, collectively, all Persons enrolled in a Plan[2] who received, or whose dependents enrolled in a Plan received, COVID-19 testing services on or after March 27,

---

[2] "'Plan(s)' means an employee welfare benefit plan established and maintained under ERISA insured by and/or for which Cigna administered claims for benefits for all or part of the Class Period." SA § 1.17.

6

2020 and prior to September 1, 2023, and who submitted a claim to their respective Plans for reimbursement, and whose claim(s) for such services were allowed at less than the amount that their provider billed for such COVID-19 testing services. Excluded from the Settlement Class are: (1) any of Cigna's officers or directors; (2) the judicial officers to whom this case is assigned and any members of their staffs and immediate families; (3) any heirs, assigns, or successors of any of the persons or entities described in this paragraph; and (4) anyone who opts out of the Settlement pursuant to ¶8.1 below.

The class definition set forth in the proposed final approval order tracks the class definition in the Settlement Agreement. *See*, Prop. Order ⁋ 2.

**Limited Release of Claims**. Settlement class members release claims against Cigna and related entities solely related to reimbursement of Covid-19 tests. Section 1.21 of the Settlement Agreement provides (adding emphasis):

"Released Claims" means any and all claims, including any and all claims, rights, and liabilities of any nature, including, but not limited to, actions, claims, demands, causes of action, obligations, damages, debts, charges, attorneys' fees, costs, arbitrations, forfeitures, judgments, indebtedness, liens and losses of any kind, source or character whether arising out of federal or state law, whether known, suspected to exist or unknown, whether asserted or unasserted, whether asserted by any Releasing Party either on its own behalf or on behalf of any other Person, whether in contract, express or implied, tort, at law or in equity or arising under or by virtue of any statute or regulation, by reason of, **arising out of or relating to the payment of claims by the Released Parties for COVID-19 testing claims**, and includes all causes of actions that were brought in the Hockenstein Action, and all such claims that could have been brought in the Hockenstein Action or against any of the Released Parties. Released Claims does not include claims to enforce the Settlement. Released Claims includes the "Unknown Claims" as defined in ¶1.33.[3]

---

[3] The inclusion of Unknown Claims within the scope of the release merely precludes class members from later abrogating the release on grounds they learn new facts or develop a new theory – a requirement any defendant would insist upon in settling. The term "Unknown Claims" is defined in SA § 1.33, which states, "'Unknown Claims' means any and all *Released Claims* which… any Settlement Class Members do not know or suspect to exist …" Thus, to be an "Unknown Claim," the relevant claim must first be a, "Released Claim," that is, a claim, "relating to the payment… for COVID-19 testing…"

The discharge in the Settlement Agreement provides that class members release and waive "Released Claims," as defined above. SA § 6.1(a). The proposed final approval order implements the release set forth in the Settlement Agreement. *See*, Prop. Order ‖ 18 (implementing, "Released Claims as defined in the Settlement Agreement.").

**Limited Claim Form Requirement**. Class members were **not** required to submit documentation to receive payment from the settlement fund for their *pro rata* share for Covid-19 tests billed up to $500. However, to receive their net *pro rata* share for the uncovered portion of Covid-19 tests billed above $500, settlement class members were required to submit a claim form and documentation showing the Covid-19 test was provided; the service provider and date of service; and proof of actual payment. *See*, SA § 7.1(c); Declaration of Omeikiea Lorenzano Ex. D. Class members could submit a receipt or invoice from the provider and/or payment records (e.g., a credit card statement to show payment), and could provide such materials either by mail to the settlement administrator or uploaded on the settlement website. SA § 7.1(d); Lorenzano Decl. Ex. D.

**Distribution to the class**. Subject to final approval, each class member will be entitled to their net *pro rata* share of the settlement fund. Each class member's claim will be computed by subtracting the amount Cigna reimbursed for their Covid-19 test(s), from the amount billed by the provider for each such test up to $500 (or amounts exceeding $500 where a valid claim form and documentation is provided). Each settlement class member will receive a payment for an equal percentage of this amount from the settlement fund, based upon the amount available for payouts after deductions for taxes, settlement administration costs, and any attorney fees which may be awarded by the Court. *See*, SA §§ 7.1, 7.2. The settlement administrator will mail checks to class members, or will make payment electronically to class members who completed and returned the

8

electronic payment request form included in the short form notice.  *See*, Lorenzano Decl. Ex. B (Payment Instruction Form).  The Plan of Allocation for distributions to class members is incorporated into the proposed final approval order (*see,* Prop. Order at ¶ 13) which requires, within 21 days, that, "the Settlement Administrator shall make the payments to Settlement Class Members pursuant to the Plan of Allocation set forth in the Settlement Agreement."

## V.    AFTER IMPLEMENTATION OF THE NOTICE PLAN, INCLUDING INDIVIDUAL NOTICE TO CLASS MEMBERS, THERE HAVE BEEN NO OBJECTIONS OR OPT OUTS

Pursuant to the Court's preliminary approval order, the Parties retained Angeion Group LLC ("Angeion") to perform the settlement administration tasks set forth in the Settlement Agreement. *See*, Lorenzano Decl. at ¶¶ 1, 3.  Angeion sent notice of the Settlement Agreement to 21,610 class members, in accordance with the notice plan set forth in the Settlement Agreement and the Court's preliminary approval order.[4]  *Id.*, ¶¶ 6-11.  Angeion received only 287 notices returned as undeliverable (*id*. ¶ 10), implying a successful mail notice rate of more than 98%.  In addition to individual notice, Angeion hosted the settlement website, which posted a long form notice providing detailed information about the case and settlement, and key documents form the case including the First Amended Complaint, Settlement Agreement, and Plaintiff's motion for attorney fees.  *Id*. ¶ 12; Posner Decl. ¶ 4; *see also*, SA § 5.2(c).  Each individual notice to class members via U.S. mail included a reference, in bold font, to the settlement website.  *See*, Lorenzano Decl. Ex. B.  Angeion reports more than 7,500 unique visitors to the settlement website.  *Id*. ¶ 13.

Class members were provided the right to opt out of the settlement or object to it.  SA §§ 8.1, 8.2; Prelim. App. Order (ECF 40) ¶¶ 9-10.  The individual notice sent to each class member

---

[4] At the time of the Preliminary Approval order was issued in January, Cigna had initially estimated approximately 28,139 settlement class members.  *See*, Swartz Aff. At ECF 38-4 ¶ 5.  Angeion processed the class data provided by Cigna for purposes of sending out notice and removed duplicate entries in so doing, resulting in a final class list of 21,610.  *See*, Lorenzano Decl. ¶ 6.

9

provided notice, in bold font, of these rights. The class notice states: "**Can you object to the settlement?** Yes. To object, follow the instructions…" The class notice further states: "**Binding Effect.** If you do not want to be legally bound by the settlement, you must opt out… To opt out, follow the instructions…" (*See*, Lorenzano Decl. Ex. B (emphasis original)). *See also*, *id.* Ex. C [Long Form Notice] §§ 9, 15. As set forth in the Preliminary Approval Order (at ¶¶ 9-10) and in the class notice (Long Form ¶¶ 9, 15), objections to the settlement were to be submitted to the Court with copies to counsel of record, and opt outs were to be submitted to the Settlement Administrator. The deadline for opt outs and objections was April 29, 2025. *See*, ECF 40 at ¶¶ 9-10. These deadlines were prominently disclosed in bold font in the individual notices to class members. *See*, Lorenzano Decl. Ex. B. As of this filing, there have been no opt outs or objections to the Settlement Agreement. *See*, Lorenzano Decl. ¶ 18.

The class's reaction is a strong vote of confidence in favor of final approval for the Settlement Agreement. "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). *Accord, Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("A positive reaction of the class to the proposed settlement favors its approval by the Court."); *In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012) (noting low opt-out and objection rates, "weighs strongly in favor of approval.").

## VI.    THE COURT SHOULD ENTER THE FINAL APPROVAL ORDER[5]

### A.    *The Settlement Class should Receive Final Certification*

An action may be certified as a class action by the Court for purposes of settlement.  *See*, Fed. R. Civ. P. 23(e).  A class may be certified where it satisfies the requirements of Fed. R. Civ. P. 23(a), plus at least one of the subsections of Rule 23(b).  *See*, Fed. R. Civ. P. 23(a)-(b).  The requirements for certification under Rule 23(a) are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the class representative will fairly and adequately protect the interests of the class.  For purposes of satisfying at least one of the subsections of Fed. R. Civ. P. 23(b), here, the parties seek certification pursuant to Rule 23(b)(3) on grounds common issues "predominate," *i.e.*, as set forth in the Rule:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction… the Second Circuit's general preference is for granting rather than denying class certification."  *In re Actos Antitrust Litigation*, 13-CV-9244 (RA), 2024 WL 4345568 at \*11 n.6 (S.D.N.Y. Sep. 30, 2024) (internal quotations omitted); *see, also, Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

---

[5] Sections VI-A and VI-B of this brief, arguing respectively for final certification of the settlement class and final approval of the Settlement Agreement, largely overlap with the brief previously filed at ECF 39 in support of preliminary certification and approval.  The arguments and authorities are largely the same, because the standard for preliminary approval is that the Court "will likely be able" to grant final approval.  Fed. R. Civ. P. 23(e)(1)(B). Additionally, no objections have been filed which might have caused the Parties to alter the analysis.

**Numerosity**.   Rule 23(a)(1) numerosity is easily satisfied.   "[N]umerosity is presumed where a putative class has forty or more members."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park* 47 F.3d 473, 483 (2d Cir. 1995)).  The settlement class covers **21,610** class members**.**

**Commonality and typicality**.    Rule 23(a)(2)-(3)'s commonality and typicality requirements are satisfied.  "The commonality and typicality requirements of Rule 23(a) tend to merge."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (quoted by *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, 2021 WL 3667979, at *8 (S.D.N.Y Aug. 17, 2021)); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)").  Commonality requires that a class claim is, "capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *In re GSE Bonds Antitrust Litig.,* 414 F.Supp.3d 686, 700 (S.D.N.Y. 2019) (quoting *Wal-Mart,* 564 U.S. at 350).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Id*. (quoting *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).  Similarly, "[t]ypicality . . . is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 155 (2d Cir. 2001)).

Here, the crux of every class member's claim as alleged by Plaintiff is that Cigna acts as a fiduciary under ERISA in determining healthcare benefits claims for Cigna ERISA plans; that as such, Cigna was obligated to reimburse class-member Covid-19 tests in full, as required under

federal law; that Cigna breached its fiduciary duty under ERISA by approving only partial reimbursement for such Covid-19 tests; and that, as a result, Cigna should pay class members the difference pursuant to ERISA §502(a)(3).

**Adequacy**.  Rule 23(a)(4) adequacy is satisfied.  Adequacy "looks both to the ability of class counsel and to the potential for conflict of interest between the representative plaintiffs and the rest of the class." *Vecchio v. Quest Diagnostics, Inc.,* 16-cv-5165(ER), 2023 WL 2842702 at *10 (S.D.N.Y. Apr. 7, 2023) (quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  Here, the interests of named plaintiff and counsel are not antagonistic to class members.  *See, id.* ("[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.") (internal quotations omitted) (collecting authority).  *See*, ECF 38-3 [Posner Decl.] ℙ20.  Additionally, Plaintiff's counsel is experienced in handling complex nationwide class action litigation.  *See*, *id*. ℙℙ 10-15.

**Predominance**.  Rule 23(b)(3) predominance is satisfied. Class certification is appropriate under Rule 23(b)(3) where: (i) common questions of law or fact predominate over individual questions; and (ii) where a class action represents a superior method for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  The predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 624.  Courts find Rule 23(b)(3) predominance, where, "[c]lass adjudication . . . is superior to individual adjudication because it will conserve judicial resources and is more efficient." *Solis v. OrthoNet LLC*, 19-cv-4678(VSB), 2021 WL 1904984, at *10 (S.D.N.Y. May 11, 2021) (quoting *Alvarez v. Schnipper Restaurants LLC*, No. 16 CIV. 5779 (ER), 2019 WL 5682633, at *6 (S.D.N.Y. Nov. 1, 2019)).  "The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617.

Here, a single class action settlement will resolve the claims of thousands of class members. Each individual claim involves between a few dollars or at most several hundred dollars. Adjudication of individual claims would be inefficient, likely uneconomical, and burden judicial resources. The class action structure is far superior for this case.

**Class counsel**. "An order that certifies a class action must… appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). To appoint class counsel, the Court:

> must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). These factors all weigh in favor of appointment of Posner Law as class counsel. Proposed class counsel began work on this case more than three years ago, developing a novel theory for recovery of Covid-19 claims, and has seen the litigation to this point. Counsel is experienced in nationwide class action practice, and has demonstrated knowledge of applicable law. Counsel's adequacy for this role was addressed in the Posner Declaration previously filed on the record at ECF 38-3, at ¶¶ 5-18, 20.

## B.    The Settlement Agreement should Receive Final Approval

Approval of class action settlements is a matter within the Court's discretion, which, "should be accorded considerable deference." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)); *Goidel v. Aetna Life Ins. Co.*, 21-CV-7619 (VSB), 2024 WL 4441806 at *5 (S.D.N.Y. Oct. 8, 2024) ("It is within a district court's discretion to approve proposed class action settlements."). "In

14

exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 WL 1832181, at \*1 (S.D.N.Y. Apr. 30, 2013). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th ed. 2002)).

### 1. *Rule 23(e)(2) Factors: The Settlement is "Fair, Reasonable, and Adequate"*

Fed. R. Civ. P. 23(e)(2) requires that, prior to approving a class settlement, the Court must find it is "fair, reasonable, and adequate" taking into account whether: (A) the class representatives and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *See*, Fed. R. Civ. P. 23(e)(2)(A)-(D).

**Rule 23(e)(2)(A): adequacy of representation**. Named plaintiff and counsel adequately represented the class, weighing in favor of approval under Rule 23(e)(2)(A). This inquiry looks to whether, "plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Goidel*, 2024 WL 4441806 at \*7-8 (citing *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)); *In re GSE Bonds*, 414 F. Supp. 3d at 692 (same). As set forth above (with respect to Rule 23(a)(1)), plaintiff's interests are aligned – indeed identical – to the those of the class. Plaintiff seeks compensation for full cost of Covid-19 tests, and asserts the same claim on behalf of class members. *See*, *In re GSE Bonds*, 414 F. Supp. 3d at 692 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries… Because of these injuries,

15

plaintiffs have an 'interest in vigorously pursuing the claims of the class.'")  Additionally, as set forth above (*supra*, p. 13), class counsel is experienced and adequate to represent the class.

**Rule 23(e)(2)(B): arm's length negotiation**.  "If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds*, 414 F. Supp. 3d at 692 (internal citation and quotation omitted).  Here, the Settlement Agreement was negotiated solely by adversarial parties at arm's length, weighing in favor of approval under Rule 23(e)(2)(B). *See*, ECF 38-3 [Posner Decl.] ¶ 20.

**Rule 23(e)(2)(C): adequacy of relief**.  The Settlement Agreement provides adequate relief, weighing in favor of approval under Rule 23(e)(2)(C).  In assessing the adequacy of relief, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *In re GSE Bonds*, 414 F. Supp. 3d at 693 (citing Rule 23(e)(2) 2018 Advisory Note).  Cigna's payment under the settlement agreement equals **85%** of the difference between amounts billed by Covid-19 test providers up to $500 per test.  Even after deductions for attorney fees and settlement administration costs, the **net** payout to settlement class members will be toward the higher end of the range for the potential class recovery were the case litigated to conclusion.  In the event the Court awards the full requested attorney fee of $600,000, the resulting settlement fund of $2,308,683 should allow distributions to the class of more than 60% of what could be recovered – in a best-case outcome, were the case litigated to conclusion – for Covid-19 tests billed up to $500.  For tests billed above $500, class members were able to submit a claim form and documentation to receive the same *pro rata* amount.

At the same time, Plaintiff's case faces numerous risks in continued litigation.  Plaintiff's assertion that Cigna breached fiduciary duties could be defeated at trial or on appeal; Cigna might

16

prevail in its defense that monies claimed by plaintiff are not "appropriate equitable relief" under ERISA § 502(a)(3); class certification could be defeated if the issue is litigated; class members who failed to exhaust internal remedies (*i.e.*, who failed to submit an appeal to Cigna before bringing suit) might have no right to recovery, and/or their claims may not be susceptible of class treatment.[6]  These examples of risks faced by Plaintiff – which could easily be multiplied – strongly support settlement.

Rule 23(e)(2)(C) itself further enumerates several criteria for evaluating the adequacy of relief, specifically:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)

Considering these specifically enumerated factors further supports settlement.

With respect to factor (i), as noted, plaintiff faces material "risks and delay."  Taking one example, it would take several years to obtain a decision from the Second Circuit as to whether class members were obligated under ERISA to exhaust internal appeals at Cigna before bringing the claim alleged in this case – and there is absolutely no guarantee that the outcome of this question of appellate law would be favorable to the class.

Factor (ii), "the method of distributing relief to the class," further supports approval of the Settlement Agreement.  "A plan of allocation, need only have a reasonable, rational basis… [and] numerous courts have held that a plan of allocation need not be perfect."  *In re: GSE Bonds*, 414

---

[6] "The Second Circuit has not addressed… whether exhaustion is required for statutory ERISA claims." *Diamond v. Local 807 Labor Management Pension Fund*, 595 Fed. Appx. 22 (2d Cir. 2014) (summary order *quoting Nechis v. Oxford Health Plans, inc.* 421 F.3d 96, 102 (2d Cir. 2005)).  The risk to Plaintiff is twofold: (1) Class members who failed to submit an appeal to Cigna for full reimbursement of Covid-19 tests may be altogether barred from any recovery, and (2) even where class members did appeal, certifying a class may be impossible if the sufficiency of each appeal must be reviewed individually.

F. Supp. 3d at 694 (cleaned up and collecting authority).  The Settlement Agreement provides for seamless distribution of payments to class members, as checks will simply go out in the mail or, for class members who elect, payment will be made electronically.  If any class members claim to have paid more than $500 per Covid-19 test, compensation at the same *pro rata* percentage will be made subject to completion of a simple claim form and documentation.  This strikes a reasonable balance, requiring documentation of actual payment for higher valued claims.  *See, Lea v. Tal Educ. Grp.*, No. 18-cv-5480, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) ("A claims processing method should deter or defeat unjustified claims," but should not be "unduly demanding.") (internal quotation omitted); *Rosenfeld* at *12 (claim process should "deter or defeat unjustified claims without imposing an undue demand on class members.") (internal quotation omitted).

With respect to factor (iii) under Rule 23(e)(2)(C), attorney fees, for the reasons set forth in detail in Plaintiff's motion for attorney fees at ECF 43-44, the requested attorney fee is reasonable, and indeed, at the lower end of comparable class action fee requests.  Moreover, class members are expected to receive a **net** payout, **after** deductions for attorney fees and settlement administration costs, of more than 60% of the difference between provider billed amounts up to $500 and Cigna's reimbursement rates for Covid-19 tests covered by the settlement.

With respect to factor (iv) under Rule 23(e)(2)(C), there are no agreements to be identified under Rule 23(e)(3),[7] other than the term sheet to settle this case.  *See, Goidel*, 2024 WL 4441806 at*12 (term sheet superseded by settlement agreement immaterial to Rule 23(e)(2) analysis).

**In sum**, the Court should grant final approval of the Settlement Agreement under the factors enumerated in Rule 23(e)(2)(C)(i)-(iv).

---

[7] Rule 23(e)(3) states: "The parties seeking approval [of a class settlement] must file a statement identifying any agreement made in connection with the proposal."

**Rule 23(e)(2)(D)**: equitable treatment of class members. The Settlement Agreement treats class members equitably relative to each other. Every member of the class will receive the same percentage – their net *pro rata* share – of the difference between amounts Cigna reimbursed, and amounts billed by providers up to $500, for relevant Covid-19 tests. Similarly, all class members who were billed, and paid, more than $500 for a Covid-19 test have had the opportunity to submit a claim form and documentation, and to receive payment at the same *pro rata* rate. *In re: GSE Bonds*, 414 F.Supp.3d at 698-99 ("claimants will be treated equitably by receiving a *pro rata* share of the recovery"); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp.3d 650, 667 (S.D.N.Y. 2015) (*pro rata* allocation "appear[ed] to treat the class members equitably ... and has the benefit of simplicity").

2. *Grinnell Factors.*

In assessing a class action settlement agreement, the Court is further required to undertake a review of the factors enumerated in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 463 (2d Cir. 1974). As succinctly summarized in *Goidel,* 2024 WL 4441806 at *6, n.5:

> The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell* factors largely overlap with Rule 23(e)(2) and may be considered together. *Goidel*, 2024 WL 4441806 at *6-14; *In re GSE Bonds*, 414 F.Supp.3d 692 ("the Court considers both sets of factors… [*i.e.*, Rule 23(e)(2) and *Grinnell*], noting where they overlap."). Here, *Grinnell* factor 1

19

(risk of delay) is addressed above and weighs in favor of settlement. This case involves novel and unsettled questions, as to which there is near certainty of significant delay if litigated. Similarly, *Grinnell* factors 4, 5, 6, and 9 overlap with Rule 23(e)(2) factors pertaining to risks as to liability, damages, class certification, and "all the attendant risks" of litigation. For the reasons set forth more fully above, these factors weigh in favor of settlement. Cigna has vigorously contested Plaintiff's allegations on all these issues, and there are material risks regarding, *inter alia*, Plaintiff's core theory that Cigna was acting as a fiduciary; that monies claimed are "appropriate equitable relief" under ERISA §502(a)(3); whether any requirement to exhaust internal appeals will bar recovery; and/or that a nationwide class could be certified. Finally, *Grinnell* factor 8 (reasonableness of the fund) weighs decisively in favor of settlement. Cigna's payment is near the higher end of what class members could achieve.

*Grinnell* factor 2 (reaction of the class) strongly supports approval of the Settlement Agreement. After individual notice to more than 21,000 class members, there have been no opt outs or objections. *See, supra*, pp. 9-10.

Remaining *Grinnell* factors do not alter the analysis. With respect to *Grinnell* factor 3 (stage of proceeding), the parties undertook a dispositive Rule 12(b)(6) motion, and the parties began the discovery process including Cigna's production of relevant claims data. It is not at all clear whether or how production of more documents or other discovery would improve the outcome for class members. Finally, *Grinnell* factor 7 is indecisive. Cigna can withstand any potential judgement, counseling neither for nor against settlement at any particular point.

### C.    *The Requested Attorney Fee and Service Award should be Approved*

For the reasons set in Plaintiff's separate motion at ECF 43-44, the Court should award class counsel attorney fees of $600,000 out of the settlement fund and a service award to named

20

Plaintiff of $10,000, payable by Cigna.  *See*, Prop. Order ¶¶ 11, 15.  As set forth in Plaintiff's separate motion, the requested fee awards are reasonable, and indeed at the lower end of the range of comparable class action fee awards.  The motion for attorney fees was posted to the settlement website on March 28, 2025, allowing class members adequate time to review and raise any objection before the deadline.  See, Posner Decl. ¶ 4.  No objections have been submitted.

In the event the Court awards the full requested fee, the settlement fund still provides compensation at the higher end of what class members might recover in litigation.  The aggregate difference between amounts billed (up to $500) to class members for covered Covid-19 tests, and Cigna's claims payouts for such tests, is $3,421,980.  *See*, Swartz Aff. at ECF 38-4.  The settlement fund, **after** deducting $600,000 for class counsel attorney fees, would be $2,308,683, allowing a **net** distribution to the class of more than **60%** of what the class could recover on Covid-19 tests billed up to $500 if the action were successfully litigated and upheld on appeal.

### D.      *Administration Fees Payable to Angeion should be Approved*

Pursuant to the Settlement Agreement, fees due to Angeion for its role as settlement administrator are to be paid out of the settlement fund.  Angeion has detailed its fees incurred to date, and estimated total fees in this matter of $101,684.  See, Lorenzano Decl. ¶ 20.  The Court should approve these costs.  *See*, Prop. Order at ¶¶ 10(c), 11(b).  Angeion is an experienced and reputable class settlement administrator, whose fees include costs for postage (both for notice and settlement checks), printing, and other aspects of the class notice plan and settlement administrator.  As class administrator, Angeion's professionalism and experience has provided valuable assistance in facilitating the settlement process.

### E.  *Health Leads, Inc. should be Approved as Cy Pres Recipient*

Finally, in the event that any settlement checks are uncashed after 180 days, remaining monies in the settlement fund should be donated to a *cy pres* recipient whose mission relates to the subject matter of the lawsuit.  In accordance with Settlement Agreement § 7.7, the Parties propose as *cy pres* Health Leads, Inc., P.O. Box 961630, Boston, MA, 02196.  *See*, Prop. Order ¶ 17. Health Leads is a non-profit whose mission includes supporting initiatives to overcome existing or historical barriers to public health care access, including vaccination.

## VII.  CONCLUSION

For the reasons set forth above, the Court should grant final approval to the class action Settlement Agreement in the form of the Proposed Ordered submitted herewith.

Dated: May 9, 2025.

**POSNER LAW PLLC**

*/s/ Gabriel Posner, Esq.*
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 517-3532
Email: gabe@Posner.Law

*Attorney for Plaintiff and
Proposed Class Counsel*

22